ILLINOIS MUNICIPAL LEAGUE RISK MANAGEMENT ASSOCIATION, Plaintiff-Appellee, v. TERRY SEIBERT, Defendant-Appellant.

Fourth District   No. 4—91—0367

Opinion filed January 16, 1992.—Rehearing denied February 20, 1992.

H. Kent Heller & Associates, P.C., of Naperville (H. Kent Heller, of counsel), for appellant.

Stanley L. Morris, of Long, Morris, Myers & Rabin, P.C., of Springfield, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Defendant, a Mattoon police officer, Terry Seibert, appeals from a summary judgment order entered in a declaratory judgment action in favor of plaintiff, the Illinois Municipal League Risk Management Association (the Association). On April 24, 1991, the Sangamon County circuit court granted the Association's motion and denied a similar motion by Seibert. The controversy arose out of litigation filed in the Federal district court against Officer Seibert, other Mattoon officers, and the City of Mattoon. The litigation alleged violations under section 1983 of the Civil Rights Act (see 42 U.S.C. §1983 (1988)) of Edward Keith Hubbartt's constitutional rights during his arrest. The court found because the Association's interest in the pending litigation did not conflict with Seibert's, the Association was not obligated to surrender control of the defense or to pay outside counsel which Officer Seibert might personally hire.

Seibert argues the court erred in finding no conflict existed between the parties. He also argues the court erred in finding that because evidence needed to disprove a constitutional violation and a punitive damages claim is similar in nature and quantity, the Association could defend both claims without a conflict arising between the parties' interests. We agree and reverse the trial court's summary judgment order in favor of the Association and remand to the court with instructions to enter summary judgment in favor of Seibert.

The Association is a nonprofit association which provides self-insurance programs to municipalities. The City of Mattoon is a member of the Association. As a member, municipal employees are represented in, and indemnified against, civil rights claims arising out of the performance of their jobs. Indemnification is not provided for malicious conduct or punitive damages.

Hubbartt filed two suits against Seibert, other Mattoon officers, and the City of Mattoon. Both suits arose from the same incident. The initial complaint, case No. 89—2319, was filed October 24, 1989. There, Hubbartt sought $10 million in compensatory damages from Seibert, a number of other Mattoon police officers, and the City of Mattoon. On February 5, 1990, Hubbartt filed an amended complaint,

naming Seibert as an individual defendant. The second suit, case No. 90−2122, was filed April 20, 1991, wherein Hubbartt sought, from Seibert, $10 million in compensatory damages and $5 million as punitive damages; it also sought compensatory and punitive damages from other Mattoon police officers, and compensatory damages from the City of Mattoon. The suits alleged Seibert and other officers violated Hubbartt's fifth, fourth, and fourteenth amendment protections during his arrest. Seibert's actions were allegedly intentional, malicious, wilful, wanton, and in reckless disregard of Hubbartt's constitutional rights.

As the Association's authorized agent, Martin Boyer Company, Inc., appointed counsel to represent Seibert in the pending litigation. In a November 13, 1989, letter, James Hays, Martin Boyer Company's representative, informed Seibert that the Association would not indemnify a claim for punitive damages, and incorrectly noted the complaint included such a claim. Because Seibert might incur personal liability as a result of a punitive damages award, Hays suggested Seibert may want to retain independent counsel at his own expense.

In a letter dated November, 21, 1989, Hays conceded the complaint did not currently seek punitive damages. He explained, however, that because it alleged Seibert's conduct was intentional, malicious, wilful, wanton, and in reckless disregard of Hubbartt's constitutional rights, the complaint might later be amended to include punitive damages. Hays stated: "If that occurs, it would be inappropriate for [the Association] to defend the claims for punitive damages. You may wish to be defended by independent counsel. Because of this potential conflict, we urge you to seek independent legal advice as to your rights." He also informed Seibert that because of unresolved policy coverage questions, the company would proceed with Seibert's representation under a reservation of rights.

On December 13, 1989, Hays informed Seibert the Association would honor his request to be defended by counsel separate from counsel representing other defendants in the litigation, and that an attorney had been authorized and assigned to represent him. In late December, however, Seibert sought, and hired, private counsel. On December 28, 1989, Seibert's private counsel wrote to counsel appointed by Martin Boyer Company and demanded the Association settle the litigation against Seibert by offering Hubbartt the maximum payable under the policy. He contended that if the Association was not willing to do this to protect Seibert from a potential punitive damages claim, it was putting its interests ahead of those of Seibert. Seibert's counsel provided no evidence why this offer was reasonable.

Seibert's retained counsel again wrote to Hays of Martin Boyer Company on March 7, 1990. Counsel informed Hays that Seibert retained him to represent him in the pending civil rights litigation because of advice provided to him by Hays in the November 13 and 21 letters. Counsel also stated, "[s]ince the nature of this case involves an agency relationship which may require the presentation of diametrically opposed defenses for the respective defendants, we are well aware of the conflict of interest which has arisen."

Although Hubbartt amended his complaint to include a request for attorney fees, he was not—at that stage—seeking punitive damages against Seibert. The Association refused to relinquish control of Seibert's representation. Hays contended in an April 4, 1990, letter, that no conflict existed between the Association and Seibert. He stated that, unlike in cases which Seibert's counsel asserted were similar, the Association was not asserting a policy defense, and compensatory damages were provided for in the pending litigation. The letter also stated this position might be reconsidered if the "complaint [was] amended or facts change[d] in any way."

After Seibert's assigned counsel rejected Hubbartt's written demand for $3 million, Hubbartt filed the second complaint, *i.e.*, case No. 90—2122 in which, among the other allegations and remedies, he alleged claims against Seibert similar to those made in his first action and, as previously mentioned, sought $10 million in compensatory damages and $5 million as punitive damages against Seibert.

In a letter dated April 27, 1990, Seibert's privately retained counsel advised the Association it must do the following: (1) immediately tender its $3 million policy limit to Hubbartt; (2) agree to indemnify Seibert for a punitive damages award; or (3) hire him as counsel to represent Seibert and pay the defense costs. The letter stated Seibert would proceed with his privately retained counsel and expect reimbursement for his costs if another option was not accepted.

On July 24, 1990, the Association sought declaratory relief in the Sangamon County circuit court. The Association asked the court to find because no conflict existed between its interest in the pending litigation and that of Seibert, it was solely authorized to appoint counsel and to represent Seibert in the civil rights litigation. In addition, it asked the court to declare the Association not liable for expenses Seibert could incur by retaining private counsel.

Because no material facts were in dispute, both parties moved for summary judgment and filed a memorandum in support of their respective motions. Seibert also filed a response to the Association's motion. The court heard arguments on the motions on January 25,

1991, and issued its opinion on February 28, 1991. The court denied Seibert's motion for summary judgment and granted the Association's. It found that in the pending civil rights litigation in which Seibert was a named party no conflict existed between Seibert's interests as a party being represented and indemnified, and those of the Association, which had the obligation to represent and indemnify the city's employees for such claims arising out of the performance of their duties. It ruled Seibert could not control his own defense or receive reimbursement from the Association for attorney fees incurred for privately retained counsel. The order was entered April 24, 1991. Seibert has appealed, seeking reversal of the court's order.

Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Suhadolnik v. City of Springfield* (1989), 184 Ill. App. 3d 155, 164, 540 N.E.2d 899-900.) As this court recently noted, the proper standard of review for evaluating the propriety of a trial court's entry of summary judgment is *de novo.* (See *Shull v. Harristown Township* (1992), 223 Ill. App. 3d 819.) The parties agree no genuine issue of material fact remains. The issues raised in this appeal address whether, as a matter of law, a conflict exists between the Association, as plaintiff in its capacity to represent and indemnify Seibert as against these claims, and defendant Seibert.

Seibert argues the trial court erred in ruling that because no conflict existed between the Association and him, the Association could control the litigation naming him as a party and would not have to reimburse him for privately retained counsel.

■ The general rule in Illinois requires an insurer to defend a claim against an insured when any theory of the complaint gives rise to the possibility that the insurer would be liable for its costs. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193-94, 355 N.E.2d 24, 28.) Because its duty to defend is broader than its duty to pay, the insurer may have to defend against claims which are not covered by the policy. (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 394, 442 N.E.2d 245, 247; *Murphy v. Urso* (1981), 88 Ill. 2d 444, 451, 430 N.E.2d 1079, 1082.) Neither party disputes that the Association has a duty to defend the allegations against Seibert.

Seibert first argues that because the Association allegedly conceded the parties' interests would conflict if punitive damages were sought, he was entitled to select independent counsel to be paid for by

the Association. He points to the November 13, 1989, letter received from Martin Boyer Company which stated—incorrectly—that punitive damages were alleged against him in the initial suit. In addition, the November 21 letter stated that if Hubbartt amended his complaint to seek punitive damages against Seibert, "it would be inappropriate for [the Association] to defend the [claim]." The April 4 letter stated no conflict currently existed, but the company might revise its position if the complaint were amended.

■ The Association argues the letters reflect that its agent, Martin Boyer Company, recognized a potential conflict and appropriately responded to it by notifying Seibert. The Association contends this does not show it "conceded" that because a conflict existed, Seibert should seek outside counsel for which the Association would pay.

As conversations between the parties progressed, Seibert knew the Association thought it should control his defense and he should not retain private counsel. However, Seibert retained private counsel shortly after receiving the November 13 and 21 letters sent to him by the Association's agent. These letters did not state that if Seibert obtained independent counsel, the Association would reimburse the costs; in fact, they suggested he do this at his own expense.

In addition, when Seibert received the November 13 and 21 letters, punitive damages had not yet been alleged against him. The November 21 letter from the Association's agent to Seibert indicated that if punitive damages were alleged against him, it would be "inappropriate" for the Association to defend these claims. However, because no punitive damages were alleged at that time, Seibert could not have relied on this information in deciding to retain his own counsel.

The April 4 letter sent by Martin Boyer Company to Seibert stated only that the Association's position regarding Seibert's representation might change if punitive damages were sought. At no time after the punitive damages claim was alleged against Seibert did the Association concede a conflict existed which required it to relinquish control of Seibert's defense, agree to pay outside counsel, or deny that it had a duty to defend Seibert.

The letters could reasonably be viewed as communicating to Seibert that a conflict might arise, and as explaining his options if this occurred. The trial court did not err in interpreting the Association's conduct in this way.

■ Seibert next argues that because his interests and the Association's interests conflict, he is necessarily entitled to retain independent counsel paid for by the Association. The insurer generally as-

sumes control of the litigation to ensure its financial interest in the outcome is protected and to minimize unwarranted liability claims. *Illinois Masonic Medical Center v. Turegum Insurance Co.* (1988), 168 Ill. App. 3d 158, 163, 522 N.E.2d 611, 613.

When an insurance company retains an attorney to defend an action against one of its insureds, the attorney must work toward furthering the interests of the insured and the insurance company. (*Maryland Casualty*, 64 Ill. 2d at 196, 355 N.E.2d at 29.) The attorney-client relationship between the insured and the attorney imposes the same professional obligations as if the insured personally retained the attorney. *Allstate Insurance Co. v. Keller* (1958), 17 Ill. App. 2d 44, 52, 149 N.E.2d 482, 486.

Illinois courts and those of other jurisdictions have noted that an attorney hired by an insurance company may feel more aligned with its interests. (*Illinois Masonic Medical Center*, 168 Ill. App. 3d at 163, 522 N.E.2d at 613; *Nandorf, Inc. v. CNA Insurance Cos.* (1985), 134 Ill. App. 3d 134, 137, 479 N.E.2d 988, 991; *Purdy v. Pacific Automobile Insurance Co.* (1984), 157 Cal. App. 3d 59, 76, 203 Cal. Rptr. 524, 534; *United States Fidelity & Guaranty Co. v. Louis A. Roser Co.* (8th Cir. 1978), 585 F.2d 932, 938 & n.5.) An attorney may find it more financially advantageous to protect the insurer's interest. (*Tews Funeral Home, Inc. v. Ohio Casualty Insurance Co.* (7th Cir. 1987), 832 F.2d 1037, 1045.) The attorney is obligated to recognize and address potential conflicts between the insurer and the insured.

The Association argues the same conflicts issues do not arise from its representation of Seibert because it is a nonprofit association, and not a "huge commercial insurance carrier." However, as Seibert aptly notes, nonprofit associations can also provide services to numerous municipalities with numerous employees. The same loyalty problems could arise despite the voluntary, nonprofit nature of the Association. Just as an attorney might face insurmountable conflicts of interest between his or her employer, a commercial insurance company, and an insured, the same problems could arise between an attorney employed by the Association and municipal employees represented and indemnified by the Association.

When an attorney employed by an insurer identifies a conflict between the insurer's interest and that of the insured, the conflict can be resolved by full disclosure and consent by the parties. (*Maryland Casualty*, 64 Ill. 2d at 198, 355 N.E.2d at 30-31.) Seibert never consented to a conflict after full disclosure.

■ Absent the parties' consent, serious ethical considerations prohibit an attorney from continuing to represent the interests of the insured and the insurer. Rules 1.7(a) and (b) of the Illinois Rules of Professional Conduct state:

"(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after disclosure.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests ***." 134 Ill. 2d Rules 1.7(a), (b).

When an insurmountable conflict arises, the Illinois Supreme Court has grafted exceptions to the insurer's right to control its insured's defense. The parties agree the conflict must rise to a level from which it appears that the insurer may not vigorously defend a claim lodged against its insured. *Nandorf*, 134 Ill. App. 3d at 137, 479 N.E.2d at 992; *County of Massac v. United States Fidelity & Guaranty Co.* (1983), 113 Ill. App. 3d 35, 43, 446 N.E.2d 584, 590.

■ If the insured could be prejudiced by the insurer's representation, the insurer meets its obligation to defend by reimbursing the insured for outside counsel. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 152, 384 N.E.2d 335, 343.) Seibert argues it is likely the Association would provide a less than vigorous defense of the punitive damages claims lodged against him. The Illinois Supreme Court has found the conflict between the insurer's interests and those of the insured requires outside counsel paid for by the insurer in two circumstances.

The first circumstance is when the insurer is obligated to provide defenses for two or more insureds who have adverse interests. (*Murphy*, 88 Ill. 2d at 452, 430 N.E.2d at 1082.) In *Murphy*, the passenger in a vehicle sued the driver and the owner of the vehicle for injuries she allegedly sustained in an auto accident. (*Murphy*, 88 Ill. 2d at 448, 430 N.E.2d at 1081.) The court found the driver's interest conflicted with the owner's interest. It was in the driver's interest to be viewed as an agent of the owner; the owner's interest, however, would be best served by arguing the driver had not been given permission to drive the vehicle. *Murphy*, 88 Ill. 2d at 452-54, 430 N.E.2d at 1083-84.

The second recognized exception in Illinois to the insurer's right to control the defense occurs when proof of certain facts would shift liability from the insurer to the insured. *Maryland Casualty*, 64 Ill. 2d at 197, 355 N.E.2d at 30; *Thornton*, 74 Ill. 2d at 152, 384 N.E.2d at 343; see also *American Family Mutual Insurance Co. v. Blackburn* (1991), 208 Ill. App. 3d 281, 286, 566 N.E.2d 889, 892; *Tews*, 832 F.2d at 1045.

*Maryland Casualty* addressed whether injuries caused by a defendant, the insured, were negligently or intentionally caused when he shot plaintiff fleeing his property. (*Maryland Casualty*, 64 Ill. 2d at 193, 355 N.E.2d at 26-27.) The defendant's homeowner's insurance excluded coverage for intentional acts, but would indemnify for negligent acts. If his actions were intentional, defendant was liable; if defendant was negligent, the insurer was liable. The court ruled that because of the mutually exclusive claims defendant should have been represented by independent counsel paid for by his insurer. The court also declared the insurer was entitled to have its own counsel participate in the litigation, and the insurer was not barred from later raising the defense of noncoverage. *Maryland Casualty*, 64 Ill. 2d at 198-99, 355 N.E.2d at 31.

The conflict which the court found in *Thornton* also involved mutually exclusive claims. The insurer would not indemnify if the insured, the defendant, was found guilty of battery, but would indemnify if defendant was found guilty only of negligence. *Thornton*, 74 Ill. 2d at 152-58, 384 N.E.2d at 343-46.

The Association argues these cases represent narrow exceptions to the general rule which authorizes the insurer to control its insured's defenses. It argues there is no conflict in the present case because each defendant in the civil rights litigation is receiving separate defenses and the counts against Seibert are not mutually exclusive. A finding that Seibert is liable for punitive damages does not necessarily mean no compensatory damages will be awarded, as may be indemnified by the Association.

Seibert contends that although the claims in the complaint are not mutually exclusive, the Association could reduce its liability exposure for compensatory damages while increasing his personal liability exposure for punitive damages. The Association could present a case to a jury which would limit the extent of Hubbartt's injuries, or the degree to which the injuries could be attributed to Seibert's actions, while less than vigorously defending the allegations that Seibert acted wilfully or maliciously against Hubbartt. In addition, the Association could later argue compensatory damages awarded were excluded from

coverage if the trier of fact found Seibert's conduct was malicious because the policy provides no protection for such acts.

The Association argues no conflict exists because defending the punitive damages claim without vigor would increase its exposure to liability for compensatory damages. It also contends the facts show it has a significant interest in controlling Seibert's pending litigation. It points to Seibert's privately retained counsel's demand approximately two months after the suit was filed. While providing no evidence to the Association, Seibert's counsel demanded the Association settle the case for policy limits. The Association contends the only basis for this demand was to free Seibert from personal liability exposure.

Seibert correctly notes, however, that the Illinois Supreme Court has never expressly ruled a conflict occurs only when mutually exclusive claims are lodged against the insured. He argues a conflict exists because of the substantial punitive damages claims which the Association will not indemnify.

Other jurisdictions have found a conflict of interest arises when an insurer offers to defend its insured while disclaiming coverage for punitive damages. See *San Diego Navy Federal Credit Union v. Cumis Insurance Society, Inc.* (1984), 162 Cal. App. 3d 358, 208 Cal. Rptr. 494; *Previews, Inc. v. California Union Insurance Co.* (9th Cir. 1981), 640 F.2d 1026; *Rimar v. Continental Casualty Co.* (1975), 50 A.D.2d 169, 376 N.Y.S.2d 309; *Parker v. Agricultural Insurance Co.* (1981), 109 Misc. 2d 678, 440 N.Y.S.2d 964.

The Illinois Supreme Court has not addressed whether a conflict exists when the allegations include noncovered, punitive damages. The first district case on which plaintiff relies ordered the insurer to relinquish control of its insured's defense and reimburse the insured for independent counsel where the allegations in the suit involved covered compensatory damages and noncovered punitive damages. See *Nandorf*, 134 Ill. App. 3d at 138, 479 N.E.2d at 992.

*Nandorf* involved a false imprisonment claim filed against a shop owner, the insured. The plaintiff sought $5,000 in compensatory damages and $100,000 in punitive damages. There, as in the instant case, the insurer proceeded to defend under a reservation of rights and refused to surrender control of the litigation. (*Nandorf*, 134 Ill. App. 3d at 135, 479 N.E.2d at 990.) The *Nandorf* court ruled the insurer should have relinquished control of the litigation to defendant and reimbursed the costs of independent counsel. *Nandorf*, 134 Ill. App. 3d at 140, 479 N.E.2d at 994.

The trial court in this case did not follow *Nandorf*. It adopted reasoning offered by the Association, and ruled the Association's inter-

ests would not be furthered by providing a "less than vigorous defense to the allegations of the defense." The Association, the court reasoned, would risk a larger compensatory damages award if its defense efforts toward the punitive damages claim were inadequate. It distinguished *Nandorf* because there the compensatory damages sought were $5,000, while the punitive damages sought were $100,000. The court reasoned *Nandorf* was distinguishable since the punitive damages sought there were significantly greater than the compensatory damages. Hubbartt is seeking from Seibert $10 million in compensatory damages and $5 million in punitive damages.

However, the proportionality between potential compensatory and punitive damages should not be the guiding factor. Seibert faces personal liability for $5 million. Two State courts have raised the issue of independent counsel paid for by the insurer where punitive damages were sought in civil rights litigation. Both courts ruled that where punitive damages are alleged, the insured had a right to independent counsel paid for by their insurer. *City of Newark v. Hartford Accident & Indemnity Co.* (1975), 134 N.J. Super. 537, 342 A.2d 513; *Hartford Accident & Indemnity Co. v. Village of Hempstead* (1979), 48 N.Y.2d 218, 397 N.E.2d 737.

■ Under the present facts, Seibert bears a significant risk in the litigation because its outcome might result in a large punitive damage award which—as a matter of law—would be borne by him. He faces grave economic consequences. Because the Association has agreed to defend under a reservation of rights and the policy precludes coverage for punitive damages, the Association does not face economic consequences for the potential $5 million punitive damages claim.

The Illinois Supreme Court has required the insurer to relinquish control of its insured's defense when the plaintiff could be prejudiced by the insurer's attorney presenting the case in the best light for the insurer. (*Thornton*, 74 Ill. 2d at 152, 384 N.E.2d at 343; *Maryland Casualty*, 64 Ill. 2d at 195, 355 N.E.2d at 29.) A similar concern arises in the instant case. Although the claims are not mutually exclusive, the Association could benefit by a finding that Seibert's conduct justifies a punitive damages award. The Association may be required to pay only minimal compensatory damages, while Seibert may be personally liable for a large punitive damages award. If Seibert's conduct is ruled malicious, the Association would not be liable for even the compensatory damages because injuries caused by such acts are excluded from indemnification.

An additional factor to consider is the rationale behind the general rule that the insurer should control its insured's defense. One

reason for the rule is to protect the insurer's financial interest. (*Illinois Masonic Medical Center*, 168 Ill. App. 3d at 163, 522 N.E.2d at 613.) The Association attempted to fulfill its duty to defend defendant by retaining counsel from a law firm independent of counsel appointed to represent the city and other defendants. However, there is no evidence the counsel Seibert retained would be more costly to the Association. Those costs will be based on a reasonable fee.

The trial court erred in ruling that, as a matter of law, no conflict of interest existed between the Association and Seibert. Seibert's interests could be substantially prejudiced if he is represented by counsel selected by the Association. Independent counsel selected by Seibert and paid for by the Association will not damage the Association's interests.

■■ Seibert next argues the court erred in concluding that because evidence required to disprove a constitutional violation and a punitive damages claim is similar in nature and quantity, the Association could defend both claims without a conflict arising between the parties' interests. The court ruled the Association should control the defense of the punitive damages claim as well as the compensatory damages claim because the evidence necessary to defend against both was similar in nature and quantity.

Seibert contends that because a lesser threshold is required to prove a constitutional violation than a punitive damages claim, counsel appointed by the Association could defend the punitive damages claim less forcefully than he might defend against the compensatory damages caused by the alleged constitutional violations.

He argues the Association could seek nominal compensatory damages while providing a less than vigorous defense to a jury instruction for the punitive damages claim because punitive damages require showing Seibert's conduct was wilful or wanton. He contends if the Association represents him in both claims, it should have to waive its reservation of rights for punitive damages.

The Association contends the nature and quantity of evidence needed to disprove each claim is similar. It correctly argues *Lester v. City of Chicago* (7th Cir. 1987), 830 F.2d 706, announced an objective fourth amendment standard for determining whether force used during an arrest violates the Constitution: "[A] police officer's use of force in arresting a suspect violates the Constitution if, judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Lester*, 830 F.2d at 713.

This approach has been adopted by the United States Supreme Court. In *Graham v. Connor* (1989), 490 U.S. 386, 104 L. Ed. 2d 443, 109 S. Ct. 1865, the Court stated all claims of excessive force by police officers during an arrest should be analyzed under the fourth amendment objective reasonableness standard. *Graham*, 490 U.S. at 395, 104 L. Ed. 2d at 454, 109 S. Ct. at 1871.

As the Association contends, the United States Supreme Court set the standard for the award of punitive damages in civil rights cases in *Smith v. Wade* (1983), 461 U.S. 30, 75 L. Ed. 2d 632, 103 S. Ct. 1625. The Court held punitive damages may be awarded against an individual in section 1983 cases even where the defendant's conduct is not motivated by malice or evil intent. Reckless or callous indifference to a plaintiff's federally protected rights is sufficient. *Smith*, 461 U.S. at 51, 75 L. Ed. 2d at 648, 103 S. Ct. at 1637.

However, as Seibert argues, objectively unreasonable conduct, which proves a constitutional violation, requires a lower threshold of evidence than evidence required to prove defendant's conduct was reckless or that it represents callous indifference to a civil rights plaintiff's rights. Although the evidence is similar in nature, additional evidence of Seibert's motives for his actions would be required to prove punitive damages.

In addition, Seibert correctly notes punitive damages can be awarded in civil rights litigation without proving actual damages. (See, *e.g.*, *Spence v. Staras* (7th Cir. 1974), 507 F.2d 554, 558, citing *Rogers v. Loether* (7th Cir. 1972), 467 F.2d 1110, 1112 n.4, and *Basista v. Weir* (3d Cir. 1965), 340 F.2d 74, 88; *Glover v. Alabama Department of Corrections* (11th Cir. 1984), 734 F.2d 691, 694, citing *Endicott v. Huddleston* (7th Cir. 1980), 644 F.2d 1208, 1217.) This consideration, too, represents a potential conflict and is similar to the conflict identified by the Illinois Supreme Court in *Maryland Casualty* and in *Thornton* where the alleged claims were mutually exclusive. (*Maryland Casualty*, 64 Ill. 2d at 197, 355 N.E.2d at 30; *Thornton*, 74 Ill. 2d at 152, 384 N.E.2d at 343.) If Seibert's conduct is found to have been reckless or callous, the jury could award punitive damages even if it found Seibert's conduct did not cause the injuries for which Hubbartt seeks compensatory damages. If Hubbartt establishes that Seibert's conduct was unreasonable, a jury instruction on whether Seibert's conduct was reckless would not necessarily be automatic, but would depend on Seibert's attorney's efforts to establish that although Seibert's conduct may have been unreasonable, it was not reckless or malicious.

However, a finding that Seibert's conduct was malicious would be beneficial to the Association. It would raise the Association's policy exclusion for compensatory damages because the policy excludes liability for malicious acts.

There is a conflict between the parties' interests in the way the constitutional claim and the punitive damages claim might be defended. The trial court erred in ruling the Association could control the defense for the compensatory and punitive claims because the evidence to defend each, although similar in nature, varies in quantity.

We find a conflict between the parties' interests in the pending litigation. Accordingly, we reverse the trial court's entry of summary judgment in favor of the Association and direct the court to enter an order requiring the Association to (1) pay reasonable attorney fees incurred by Seibert and (2) allow Seibert's personally selected counsel to assume control of the litigation as against him.

Reversed and remanded.

GREEN, P.J., and STEIGMANN, J., concur.