THE VILLAGE OF LOMBARD, Plaintiff and Counterdefendant-Appellant, v. INTERGOVERNMENTAL RISK MANAGEMENT AGENCY (IRMA), Defendant and Counterplaintiff-Appellee.

Second District    No. 2—96—1252

Opinion filed June 4, 1997.

1004

Michael J. Duggan and Lance C. Malina, both of Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellant.

Arthur L. Klein, Eugene J. Kelley, Jr., and Jeffrey L. Widman, all of Arnstein & Lehr, of Chicago, and Roger K. O'Reilly, of Law Office of Roger O'Reilly, of Wheaton, for appellee.

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

The plaintiff and counterdefendant, the Village of Lombard (Lombard), filed a declaratory judgment action against the defendant and

counterplaintiff, Intergovernmental Risk Management Agency (IRMA), seeking a declaration as to the scope of IRMA's defense obligations under an insurance coverage agreement entered into between the parties. IRMA subsequently filed a counterclaim, seeking a declaration that it was not obligated to defend Lombard and its employees for certain punitive damages claims not covered within the indemnity provisions of the agreement. On September 25, 1996, the circuit court of Du Page County entered an order granting summary judgment on IRMA's behalf as to both the complaint for declaratory judgment and the counterclaim. We affirm.

IRMA is an intergovernmental association consisting of 68 public entities in northeastern Illinois. IRMA is a public insurance pool that exists to provide coverage for claims of injuries to persons or properties made against its members. Lombard is an Illinois municipal corporation and a member of IRMA.

IRMA also extends insurance coverage to the individual officials and employees of each member. The scope of this coverage is defined in policy documents, endorsements, and amendments, which are issued and incorporated on an annual basis in IRMA's coverage package. Coverage provided by IRMA includes not only indemnification for financial losses due to litigation claims but also the duty to defend against such litigation.

IRMA reviews and makes amendments to its coverage documents on an annual basis. In 1992, IRMA amended its coverage documents to include several new exclusions. One such exclusion, entitled the "No Coverage-No Defense" amendment, provided as follows:

> "It is agreed that we will not provide a defense or pay attorneys fees or defense costs for any loss, claim proceeding, suit or any other legal or administrative action or part thereof to which this coverage document does not apply and/or for which there is no coverage or indemnification afforded except at the sole discretion of [IRMA]."

Another exclusion, entitled the "Punitive Damages Exclusion" amendment, provided as follows:

> "It is agreed that this coverage does not apply to punitive or exemplary damages. In addition, we will not pay defense costs nor shall we be obligated to provide a defense for claims or legal actions in anyway requesting punitive or exemplary damages, except at our discretion."

A copy of these proposed amendments was distributed to the entire IRMA membership on or before February 22, 1993. After reviewing and considering the proposed amendments, the members of IRMA, including Lombard, unanimously approved their adoption as part of the coverage documents.

After these amendments were approved, IRMA adopted an informal policy whereby, at its sole discretion, it would appoint counsel to defend a member against both the covered and noncovered claims contained in the same lawsuit. This appointment of counsel was contingent upon: (1) a conference between the member, IRMA, and counsel, during which all potential conflicts were discussed and waived; (2) an agreement that if any actual conflict of interest arose during the course of the litigation, it would be immediately identified and disclosed; and (3) an agreement that the existence of an actual conflict having an impact on the handling of the litigation or strategy would require the member to immediately retain separate counsel at its own expense.

On March 4, 1995, Megan Murray, a former Lombard police officer, filed an eight-count complaint in the United States District Court for the Northern District of Illinois naming Lombard and several of its officers and employees as defendants. The complaint alleged violations of federal civil rights and employment laws and sought both compensatory and punitive damages. Lombard tendered the defense of the entire matter to IRMA.

IRMA's executive director accepted the defense of the covered compensatory claims but, pursuant to the "No Coverage-No Defense" amendment, rejected defense of the noncovered punitive claims. IRMA did offer to voluntarily supply Lombard and its employees with the services of an IRMA-appointed counsel to defend the noncovered punitive claims, but only on the condition that they would waive all potential conflicts of interest.

Lombard refused to waive all potential conflicts and appealed the executive director's decision to a three-member IRMA appeals committee. Lombard requested the appeals committee to require IRMA to pay for separate, independent counsel to defend both Lombard and its employees in the entire lawsuit. Despite Lombard's request, the appeals committee unanimously affirmed the executive director's decision. The appeals committee's ruling was then unanimously affirmed by the nine-member IRMA executive board. The executive board's decision, in turn, was affirmed by IRMA's 68-member board of directors. Except for Lombard, all members voted to affirm the decision.

On May 22, 1995, Tim Ryan, Jr., and Garrett Wainwright also filed an eight-count complaint in the United States District Court for the Northern District of Illinois naming Lombard and several of its officers and employees as defendants. This complaint, similar to the Murray complaint, contained both covered compensatory and noncovered punitive claims. As with the Murray suit, Lombard tendered

the entire matter to IRMA, demanding that IRMA pay for separate defense counsel to represent Lombard and its employees against both the covered and noncovered punitive claims. IRMA refused to defend the noncovered claims, again relying on the "No Coverage-No Defense" amendment. IRMA and Lombard subsequently agreed that the dispute concerning the Ryan suit would be treated by the parties as if it had run the full course of IRMA internal appeals.

On March 18, 1996, Lombard filed the instant declaratory judgment action seeking a declaration that (1) a conflict of interest exists which prevents IRMA-appointed counsel from defending Lombard and its employees against the covered compensatory claims in the underlying action; (2) that IRMA is obligated to defend Lombard and its named employees against both the covered and noncovered allegations in the Murray and Ryan suits, using an independent attorney of Lombard's choice; and (3) that IRMA must reimburse Lombard for all the costs and attorney fees incurred thus far in the defense of the Murray and Ryan actions.

In its answer to the complaint, IRMA denied having any duty to defend the noncovered punitive claims and further denied that there was any conflict of interest that prevented its appointed counsel from representing Lombard and its employees as to the covered compensatory claims. IRMA also filed a counterclaim, seeking a declaration, *inter alia*: (1) that the "No Coverage-No Defense" amendment was valid and binding on all IRMA members; (2) that the amendment was properly applied to Lombard and its employees in the underlying lawsuits; (3) that IRMA had no obligation to reimburse Lombard for any defense costs incurred with respect to the noncovered claims in the underlying suits; (4) that IRMA had no obligation to supply separate counsel to Lombard or any other defendant in the underlying suits with respect to the noncovered claims; (5) that IRMA had fully discharged its policy obligations to Lombard and its employee defendants in the underlying suits; and (6) that Lombard was estopped from contesting the validity of the amendment.

The parties filed cross-motions for summary judgment and submitted a joint stipulation of agreed facts. On September 25, 1996, following a hearing on the motions, the trial court granted IRMA's motion for summary judgment and denied Lombard's. The trial court explained its decision as follows:

"The thing that impresses me the most about this is all the cases that [Lombard] cite[s] are about insurance policies. And all of the law is insurance law and all of the law [ ] says that insurance policies must always be strictly construed against the person who wrote them.

But in this situation, Lombard sits on both sides of the case. Lombard is the insurance company, Lombard is one of the 68 people who decided as a matter of policy that this was how they were going to work.

\*\*\*

Lombard imposed this contract upon themselves. Lombard is part of the management team.

\*\*\*

So Lombard is not only a covered party, they are part of the management team. For that reason I think that that takes this situation out of all the rest of [the cases] that [Lombard] \*\*\* cited. \*\*\* I distinguish this situation from all of the \*\*\* strict insurance cases and find for the defendant."

In so holding, the trial court rejected Lombard's argument that a conflict of interest required IRMA to pay for attorneys selected by Lombard to defend the whole action. Lombard filed a timely notice of appeal.

■ Summary judgment is proper if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1994). An order granting summary judgment should be reversed if the judgment was incorrect as a matter of law. *In re Estate of Herwig*, 237 Ill. App. 3d 737, 741 (1992). The disposition of a summary judgment motion is not discretionary, and the standard of review is *de novo*. *Quinton v. Kuffer*, 221 Ill. App. 3d 466, 471 (1991). The parties agree that no genuine issue of fact remains.

Lombard argues that the trial court erred in determining that IRMA was not obligated to provide an independent counsel of Lombard's choice to represent its interests in the entire litigation. Lombard contends that, despite the language contained in the "No Coverage-No Defense" amendment, public policy requires that IRMA's duty to defend be extended to both the covered and noncovered claims. Lombard also argues that, in order to avoid a potential conflict between the interests of IRMA and Lombard, IRMA should be required to hire independent counsel to represent Lombard.

■ The general rule in Illinois requires an insurer to defend a claim against an insured when any theory of the complaint gives rise to the possibility that the insurer would be liable for its costs. *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 193-94 (1976). Because the insurer's duty to defend is broader than its duty to indemnify, in some instances an insurer may have to defend against claims that are not covered by the policy. *Conway v. Country Casualty Insurance*

*Co.*, 92 Ill. 2d 388, 394 (1982). Our supreme court has held that this duty to defend extends to cases where the complaint alleges several causes of action, one of which is within the coverage of a policy while the others may not be. *Peppers*, 64 Ill. 2d at 194.

■ As IRMA correctly notes, however, the parties to an insurance agreement, as the parties to any other contract, have the power to contractually define the limits of the defense and indemnity protection afforded to the insured party. *Community Unit School District No. 5 v. Country Mutual Insurance Co.*, 95 Ill. App. 3d 272, 278 (1981). The insurer's duty to defend its insured arises from, and is limited by, the expressed undertaking to defend as stated in the contract of insurance. *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 48 (1987). Therefore, an insurer is vested with the power to limit its duty to defend simply by including a provision in its coverage document that limits its defense obligations to claims falling within the coverage of the policy. *Community Unit School District No. 5*, 95 Ill. App. 3d at 278.

■ In the case at bar, IRMA's defense obligations are explicitly stated in the "No Coverage-No Defense" and "Punitive Damages Exclusion" amendments to the coverage agreement. The plain language of these amendments provides that IRMA has no obligation to either defend or indemnify claims that seek punitive damages. Indeed, Lombard concedes in its appellate brief that the coverage amendments, as written, do not impose a duty on IRMA to defend or indemnify claims seeking punitive damages.

Despite this contractual language, Lombard nonetheless asserts several reasons why IRMA should be required to provide, at its own expense, independent counsel to represent both Lombard and its employees as to both the covered and noncovered claims. Lombard first argues that the "No Coverage-No Defense" amendment violates public policy because it vitiates the long-established principle that requires an insurer to "defend an action against an insured when the complaint in that action sets forth allegations which bring the claim potentially within the coverage of the insurance policy." *Nandorf, Inc. v. CNA Insurance Cos.*, 134 Ill. App. 3d 134, 136 (1985). Lombard argues that such public policy prohibits the insurer from dividing its duty to defend in a way that would allow it to defend and control only one portion of a lawsuit, while leaving the insured on its own to defend the noncovered portions.

Lombard contends that handling litigation in such a manner would result in numerous ethical ambiguities, as the insured would be represented by multiple counsel pursuing different aspects of the litigation. In the instant case, for example, Lombard would be

represented by IRMA-appointed counsel as to the compensatory claims and independently retained counsel as to the punitive claims. Lombard argues that IRMA-appointed counsel's sole concern will be to limit Lombard's exposure to compensatory damages. As IRMA has no obligation to indemnify a punitive damages award, Lombard envisions a scenario where IRMA-appointed counsel may encourage the jury to award punitive damages rather than compensatory damages. Lombard contends that such a circumstance would be contrary to both public policy and Rule 1.7(b) of the Rules of Professional Conduct (134 Ill. 2d R. 1.7(b)).

In support of its argument, Lombard relies on *Illinois Municipal League Risk Management Ass'n v. Seibert*, 223 Ill. App. 3d 864, 873-77 (1992), and *Nandorf, Inc. v. CNA Insurance Cos.*, 134 Ill. App. 3d 134, 139-40 (1985). *Seibert* involved a defense dispute between a municipal employee and the intergovernmental risk management association which provided him insurance coverage. *Seibert*, 223 Ill. App. 3d at 866. The municipal employee was named as a defendant in two civil rights suits seeking $10 million in compensatory damages and $5 million in punitive damages. *Seibert*, 223 Ill. App. 3d at 866-67. Although the coverage agreement did not indemnify for claims for punitive damages, the insurer expressly acknowledged that it was under a duty to defend the entire lawsuit and did so pursuant to a reservation of rights. *Seibert*, 223 Ill. App. 3d at 867. The insurer did, however, notify the employee that he might wish to retain independent counsel to properly advise him as to his rights. *Seibert*, 223 Ill. App. 3d at 867. The employee did retain independent counsel, who negotiated with the insurer in an attempt to settle the litigation with the plaintiff. *Seibert*, 223 Ill. App. 3d at 868.

The insurer then filed a declaratory judgment action seeking a determination that there was no conflict between its interests and the interests of the employee in the underlying litigation and that it was solely authorized to appoint counsel to represent the employee in the litigation. *Seibert*, 223 Ill. App. 3d at 868. The *Seibert* court denied the requested relief, commenting that, when an insurance company retains an attorney to defend its insured, the attorney must work toward furthering the interests of both the insured and the insurance company. 223 Ill. App. 3d at 871. The court explained that the interests of insured and insurer are not always in harmony and that an insurmountable conflict may arise when it appears that the insurer cannot vigorously defend a claim lodged against its insured. *Seibert*, 223 Ill. App. 3d at 872. The *Seibert* court concluded that such a conflict arises where a lawsuit seeks both compensatory and punitive damages, commenting:

"Under the present facts, [the insured] bears a significant risk in the litigation because its outcome might result in a large punitive damage award which *** would be borne by him. He faces grave economic consequences. Because the [insurer] has agreed to defend under a reservation of rights and the policy precludes coverage for punitive damages, the [insurer] does not face economic consequences for the potential $5 million punitive damages claim.

The Illinois Supreme Court has required the insurer to relinquish control of its insured's defense when the [insured] could be prejudiced by the insurer's attorney presenting the case in the best light for the insurer. [Citations.] A similar concern arises in the instant case. Although the claims are not mutually exclusive, the [insurer] could benefit by a finding that [the insured's] conduct justifies a punitive damages award. The [insurer] may be required to pay only minimal compensatory damages, while [the insured] may be personally liable for a large punitive damages award. If [the insured's] conduct is ruled malicious, the [insurer] would not be liable for even the compensatory damages because injuries caused by such acts are excluded from indemnification." *Seibert,* 223 Ill. App. 3d at 875.

The court therefore held that there was a conflict of interest between the employee and the insurer and ordered that the insurer pay for the employee's personally selected counsel to assume control of the litigation. *Seibert,* 223 Ill. App. 3d at 878.

In *Nandorf, Inc. v. CNA Insurance Cos.,* 134 Ill. App. 3d 134, 135 (1985), the insured, a shop owner, was named as a defendant in a false imprisonment suit. The plaintiff sought $5,000 in compensatory damages and $100,000 in punitive damages. *Nandorf,* 134 Ill. App. 3d at 135. Acknowledging that it had an obligation to defend the action, the insurer proceeded to defend the litigation under a reservation of rights. *Nandorf,* 134 Ill. App. 3d at 135. Despite the insured's subsequent requests, the insurer refused to surrender control of the defense. *Nandorf,* 134 Ill. App. 3d at 135. For reasons similar to those discussed in *Seibert,* the *Nandorf* court ruled the insurer should have relinquished control of the defense and reimbursed the costs of independent counsel to represent the insured. 134 Ill. App. 3d at 140.

Although we certainly recognize the holdings in *Seibert* and *Nandorf,* those cases differ from the instant controversy in one important respect. In those cases, the coverage agreements at issue did not contain a provision that expressly limited the insurer's duty to defend to only those claims covered by the policy. Without such a contractual restriction, the *Seibert* and *Nandorf* courts properly applied the applicable law and held that the insurer was obligated to defend both

the covered and the noncovered claims. Moreover, the insurers in both *Seibert* and *Nandorf* conceded that they were under an obligation to defend the insured against all the claims contained in the suit. The sole question at issue in those cases, therefore, was whether the insurer could appoint its own counsel to represent the insured, or whether it had to pay for counsel selected by the insured. *Seibert*, 223 Ill. App. 3d at 878; *Nandorf*, 134 Ill. App. 3d at 140.

In the instant case, IRMA was under no contractual obligation to defend Lombard and its employees for the noncovered punitive claims. Rather, the parties expressly agreed in the "No Coverage-No Defense" and "Punitive Damages Exclusion" amendments that there would be no defense or indemnity for claims seeking punitive damages. As noted above, an insurer may properly seek to contractually limit the scope of its duty to defend in the coverage agreements. See *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 48 (1987).

Furthermore, we agree with the trial court that the relationship between Lombard and IRMA cannot be viewed as a typical insurer/insured relationship. Lombard is one of 68 member municipalities that comprise and govern IRMA and was partially responsible for establishing and approving the terms of IRMA's coverage obligations. In 1993, prior to the adoption of the "No Coverage-No Defense" and "Punitive Damages Exclusion" amendments, Lombard was provided with the text of these amendments and given the opportunity to vote on whether they should be incorporated into the coverage agreement. As noted above, Lombard voted in favor of incorporating these amendments. Lombard is therefore partially responsible for creating the contractual language of which it now complains.

As Lombard contractually agreed to the amendments limiting the scope of IRMA's defense and indemnity obligations, we find that the amendments are valid and enforceable. The plain language of these amendments limits IRMA's defense obligations to only those claims that fall within the scope of coverage. We therefore hold that, while IRMA must appoint counsel to represent Lombard on the covered compensatory claims, it owes no duty to provide counsel to defend the noncovered punitive claims.

In so ruling, we acknowledge that it might be preferable to have a single attorney control the entirety of the litigation. However, it is certainly not unprecedented to have multiple counsel representing a single party in the same lawsuit. Additionally, there is no Illinois authority that forbids multiple representation. Although the presence of multiple counsel may add to the complexity of the litigation, such complexity should be eased by heightened cooperation and coordination among counsel.

Nor do we find there to be any conflict of interest that prevents IRMA-appointed counsel from defending Lombard and its employees as to the covered compensatory claims. The authorities relied on by Lombard to establish the existence of a conflict of interest all involve litigation where the insurer has undertaken to defend *both* covered and noncovered claims. See *Seibert*, 223 Ill. App. 3d at 875; *Nandorf*, 134 Ill. App. 3d at 140. In these cases, an irreconcilable conflict arose because the insurer-appointed counsel was placed in a situation where it could not adequately advance the insurer's interests in respect to the covered claims and, at the same time, advance the insured's interests with respect to the noncovered claims. *Seibert*, 223 Ill. App. 3d at 875; *Nandorf*, 134 Ill. App. 3d at 140.

In the instant case, IRMA-appointed counsel will not be presented with such a conflict because it will not have to defend the noncovered claims. IRMA-appointed counsel will therefore be in the position to defend both Lombard's and IRMA's interests as to the compensatory damages claims, while Lombard and its employees may retain independent counsel to defend their interests as to the punitive damages claims. In such a manner, the full interests of Lombard and its employees will be protected.

Furthermore, there is no reason to believe that IRMA-appointed counsel will defend the covered compensatory claims in a manner that would be harmful to Lombard's position with respect to the noncovered claims. An insurer is bound not to put its own interest ahead of the protection it has promised to its insured. *Briseno v. Chicago Union Station Co.*, 197 Ill. App. 3d 902, 906 (1990). Additionally, Lombard will have the opportunity to retain independent counsel to defend the noncovered claims and prevent any potential diminishment of its position. As IRMA correctly notes, there is no provision in the coverage agreement that gives IRMA-appointed counsel the right to maintain exclusive control over the litigation. Rather, Lombard's defense will be the collaborative and coordinated effort of multiple attorneys who will all be under an ethical obligation to persuasively advance its interests. We are aware of no Illinois authority holding that such a defense arrangement creates an insurmountable conflict of interest.

Finally, it is important to note that the compensatory and punitive damages sought in the underlying suit arise out of the same factual occurrence. As the claims arise out of precisely the same conduct, it is unlikely that the jury would view the covered and noncovered claims as mutually exclusive outcomes. See generally *Tews Funeral Home, Inc. v. Ohio Casualty Insurance Co.*, 832 F.2d 1037, 1046 (7th Cir. 1987). It therefore should not be difficult for multiple

counsel to advance a consistent defense on behalf of Lombard and its employees as to both the compensatory and punitive damages claims. We therefore hold that the division of the duty to defend between the covered and noncovered claims neither creates a conflict of interest nor violates public policy.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS and McLAREN, JJ., concur.