**In the Matter of NEW ERA, INC.,**

**Appeals of NEW ERA, INC. and PHOENIX INSURANCE COMPANY.**

Nos. 96–2036, 96–2854.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 1997.

Decided Feb. 9, 1998.

William L. Berry, Dunham, Boman & Leskera, Belleville, IL, John L. Bitzer (argued), Dunham, Boman & Leskera, Collinsville, IL, for Appellant.

Donald M. Samson, Belleville, IL, for Trustee–Appellee.

Jeffrey S. Hebrank (argued), David John Gerber, Burroughs, Hepler, Broom, MacDonald & Hebrank, Edwardsville, IL, for Debtor–Appellee.

Steven N. Mottaz (argued), Thomas, Mottaz, Eastman & Sherwood, Alton, IL, for Appellees.

Before POSNER, Chief Judge, and EASTERBROOK and KANNE, Circuit Judges.

POSNER, Chief Judge.

These bankruptcy appeals have a tangled history, an unbelievable present, and no future. The tale begins in 1987, when three buildings owned by the Hamiltons and rented by New Era, a company that recaps tires, burned down. New Era's insurer, Phoenix Insurance Company, had issued it a liability policy that had a limit of $1 million. In 1989, the Hamiltons sued New Era in an Illinois state court for damage to the buildings caused by the fire, for which they held New Era responsible. Phoenix took over the defense of the suit and hired a lawyer named Hebrank to handle it. In 1991, New Era declared bankruptcy, initially under Chapter 11; it was converted the next year to Chapter 7, and a trustee in bankruptcy, Samson, was appointed. The Hamiltons got the bankruptcy court to lift the automatic stay of suits against the debtor in order to permit them to continue their suit against New Era. They pointed out that New Era had insurance and to the extent that the insurance covered its liability other creditors would not be harmed. The order lifting the stay was not explicit, however, about whether the stay was being lifted only to the extent of the insurance coverage. If the Hamiltons got a judgment against New Era for more than $1 million, other creditors of New Era would be hurt because the corporation's net liabilities would be greater.

Which is what happened: in 1994 the Hamiltons obtained a judgment for $2.3 million against New Era. The following year, however, Samson negotiated a settlement in which the Hamiltons agreed not to seek satisfaction of any part of the judgment from New Era. In exchange, Samson assigned them New Era's claim that in failing to settle the Hamiltons' suit within the $1 million policy limit, Phoenix had breached its duty of good faith to its insured. (The duty is intended to prevent an insurance company from gambling with the insured's money. Suppose a suit against an insured has a 50 percent chance of failing and a 50 percent chance of yielding a judgment of $10 million for the plaintiff, and the policy limit is as in our case $1 million. The insurance company would have no incentive to settle the suit for more than $500,000—the expected cost to it of going to trial—but the insured, facing an expected cost of $4 million—the expected cost to it of going to trial (.5 × $10 million), minus the policy limit—would be desperate for the insurance company to offer the policy limit in settlement. And the plaintiff in the suit against the insured might accept, if less optimistic about the likely outcome of the suit.) As part of the assignment of the bad-faith claim against Phoenix, the Hamiltons agreed to remit to the debtor's estate 5 percent of any judgment they obtained against Phoenix.

Phoenix sought leave from the bankruptcy court to intervene to oppose the settlement. The bankruptcy judge turned Phoenix down, the district judge affirmed, and Phoenix has appealed. This is the first of the two appeals before us.

New Era had been dissolved by order of the Secretary of State of Illinois back in 1992. But under Illinois law, corporate dissolution does not eliminate any legal remedies that the corporation, its shareholders, or its directors may have that arose prior to the dissolution, provided the remedy is sought within five years after dissolution. 805 ILCS 5/12.80. In 1994, lawyer Hebrank—who, remember, had been hired by Phoenix to defend the Hamiltons' suit against New Era, and who was and is still being paid by Phoenix—filed a motion in the bankruptcy court, purportedly on behalf of New Era, to "enforce the automatic stay." By this he meant that he wanted the court to enjoin the Hamiltons from proceeding against Phoenix on the assigned claim. The court denied the motion, and the district court affirmed. Hebrank, still purportedly acting on behalf of New Era—though New Era is still in bankruptcy, and Samson, not Hebrank, is the trustee and Hebrank is not working for Samson—has appealed the district court's order to us. This is the second appeal. Hebrank and Phoenix have filed a single, joint brief in the two appeals, even though Phoenix has hired a different lawyer to represent it in its appeal and Hebrank maintains that he is working for New Era rather than for Phoenix. Samson, New Era's trustee in bankruptcy, has not been made a party either to Phoenix's appeal from the refusal to allow it to intervene or to Hebrank's appeal, purport-

edly on behalf of New Era, from the refusal to enforce the automatic stay.

The last link in the chain is the Hamiltons' suit against Phoenix on the assigned claim for bad faith, pursuant to the assignment. That suit was filed in 1997 in an Illinois state court and removed by Phoenix to federal district court (the same one to which orders in New Era's bankruptcy proceeding are appealed), where it is pending.

█ It is perfectly clear, and indeed sanctionably clear, that Hebrank has no right to appeal in New Era's name. When a debtor has a trustee in bankruptcy, as the ghost of New Era does, the trustee has, with immaterial exceptions, *In re Perkins*, 902 F.2d 1254, 1258 (7th Cir.1990); *In re Carbide Cutoff, Inc.*, 703 F.2d 259 (7th Cir.1983); *Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 247 and n. 14 (5th Cir.1988), the exclusive right to represent the debtor in court. 11 U.S.C. § 323(a); *Supporters to Oppose Pollution, Inc. v. Heritage Group*, 973 F.2d 1320, 1327 (7th Cir.1992); *Fox Valley AMC/Jeep, Inc. v. AM Credit Corp.*, 836 F.2d 366 (7th Cir.1988); *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 535–36 (4th Cir.1997); *In re Eisen*, 31 F.3d 1447, 1451 n. 2 (9th Cir.1994). Of course the trustee can hire a lawyer to handle the corporation's cases, but Samson has not hired Hebrank. Hebrank had no right to appear in the bankruptcy court, or the district court, or this court, on behalf of New Era. So his appeal must be dismissed—and for the further and independent reason that New Era could not possibly benefit from the victory that Hebrank seeks, namely the enjoining of the Hamiltons from pursuing the assigned bad-faith claim against Phoenix. If that claim succeeds, New Era will obtain 5 percent of the proceeds. If it fails, as Hebrank wants (not surprisingly, considering who's paying him—Phoenix), New Era will obtain nothing. At argument, Hebrank expressed concern that the Hamiltons may try to recover the excess judgment from New Era. If so, this would be a concern of the trustee, not of Hebrank (our first point); it is not so, since the settlement agreement protects New Era against just such an eventuality. If New Era's creditors or shareholders are afraid the trustee won't protect their interests, their remedy is to seek his removal. 11 U.S.C. § 324(a); *In re*

*Thompson*, 965 F.2d 1136, 1148 n. 15 (1st Cir.1992); *In re JKJ Chevrolet, Inc.*, 26 F.3d 481, 485 (4th Cir.1994).

█ The appeal being frivolous, indeed doubly frivolous, the Hamiltons may be entitled to an award of damages under Fed. R.App. P. 38. In addition, Hebrank may have engaged in unethical conduct, as it appears that he is being paid by one party (Phoenix) to take a dive on behalf of its opponent (New Era), for, to repeat, the only effect of obtaining a stay of the Hamiltons' suit against Phoenix, so far as New Era is concerned, would be to forfeit New Era's 5 percent interest in the successful prosecution of that suit. We do not wish to prejudge the ethical question, which is not addressed in the briefs. But we shall have to issue lawyer Hebrank a rule to show cause why he should not be ordered to pay damages under Rule 38 for filing a frivolous appeal and sanctioned under Fed. R. App. 46(c) for conduct unbecoming a member of the bar of this court.

█ We turn to Phoenix's appeal, which is also frivolous and also has a whiff of unethical conduct. Phoenix wishes to intervene in the bankruptcy proceeding under Bankr.R.2018(a) (permissive intervention) in order to oppose the settlement between the Hamiltons and Samson whereby the latter assigned his debtor's bad-faith claim to the Hamiltons in return for a 5 percent interest in the claim. Were Phoenix allowed to intervene and succeeded in upending the settlement, the bad-faith claim would revert to New Era and so be prosecuted by Samson, the trustee, rather than by the Hamiltons. How that would make Phoenix better off is so unclear as to raise profound doubts about whether Phoenix can be said to be "aggrieved" by the order denying intervention. If it was not aggrieved by the order, it cannot appeal from it. *In re Andreuccetti*, 975 F.2d 413, 416–17 (7th Cir.1992); *Kane v. Johns–Manville Corp.*, 843 F.2d 636, 641–42 (2d Cir.1988).

Another way to make the point is that Phoenix could not show good cause to intervene, as the rule explicitly requires, Bankr.R. 2018(a); 9 *Collier on Bankruptcy* ¶ 2018.04[3] (15th ed., Lawrence P. King ed.1996), to oppose the settlement because it

has no legally protectable interest in opposing it and without such an interest it cannot establish good cause to intervene. *In re Addison Community Hospital Authority,* 175 B.R. 646, 651 (Bankr.E.D.Mich.1994). The bad-faith claim was an asset of the insured, that is, of New Era, the debtor in bankruptcy. Had Samson not assigned it to the Hamiltons, it would have remained an asset of the debtor, and thus in Samson's control, and Samson rather than the Hamiltons would have brought suit against Phoenix.

■ Still another way to understand the utter futility of Phoenix's attempt to appeal is to observe that it is no business of Phoenix who owns the claim against it. Illinois allows the assignment to judgment creditors of claims against insurance companies for refusing in bad faith to settle a claim within the policy limits, without the insurance company's having to consent to the assignment. *Brocato v. Prairie State Farmers Ins. Ass'n,* 166 Ill.App.3d 986, 117 Ill.Dec. 849, 851, 520 N.E.2d 1200, 1202 (1988); *Browning v. Heritage Ins. Co.,* 33 Ill.App.3d 943, 338 N.E.2d 912, 916 (1975); *Brown v. State Farm Mutual Automobile Ins. Ass'n,* 1 Ill.App.3d 47, 272 N.E.2d 261, 264 (1971). The reason given by *Brown* is that despite the element of bad faith, such a claim is more contractual than tortious in character, and contract claims, unlike tort claims, are traditionally assignable, subject to limitations not relevant to this case. See, e.g., *Collins Co. v. Carboline Co.,* 125 Ill.2d 498, 127 Ill.Dec. 5, 10–11, 532 N.E.2d 834, 839–40 (1988); *Patrick Media Group, Inc. v. DuPage Water Comm'n,* 258 Ill.App.3d 1068, 196 Ill.Dec. 793, 800, 630 N.E.2d 958, 965 (1994); *First Illinois National Bank v. Knapp,* 246 Ill.App.3d 152, 185 Ill.Dec. 780, 783–84, 615 N.E.2d 75, 78–79 (1993). Phoenix thus has no right to block the assignment. The only "interest" it has in it—and it is not the kind of interest that the law protects—is the possibility that Samson would press the claim against it less vigorously than the Hamiltons will. It's as if Phoenix were objecting to the Hamiltons' choice of lawyer to represent them in the suit, without any basis in law (such as a conflict of interest), merely because it thought the lawyer would be effective.

■ We add, as bearing further on the issue of frivolousness, that there is no basis whatsoever for Phoenix's and Hebrank's other arguments. One is that the settlement in which the Hamiltons acquired New Era's claim against Phoenix should be set aside because it has resulted in duplicative litigation, Phoenix having previously filed suit against the Hamiltons for a declaration that it was not liable under the policy it had issued to New Era. It is true that Phoenix's suit preceded the Hamiltons', but since the Hamiltons' suit has been removed by Phoenix into the same court in which its suit is pending, the cure for duplication is to consolidate the suits—which should be done at once.

■ Hebrank asks us—nominally on behalf of New Era only, but really, it may be, on Phoenix's behalf, since, as we mentioned earlier, the appellants have filed a joint brief, signed by Hebrank, rather than separate briefs, and Hebrank is being paid by Phoenix, not New Era—that we tell the bankruptcy court to lift the automatic stay only to the extent of New Era's insurance coverage, $1 million. The stay was lifted almost six years ago, and in the absence of extraordinary circumstances not shown here there is no basis for directing the bankruptcy court to revisit that order. Bankr.R. 9024; see *Neuberg v. Michael Reese Hospital Foundation,* 123 F.3d 951 (7th Cir.1997); *Rodriguez–Antuna v. Chase Manhattan Bank Corp.,* 871 F.2d 1, 3 (1st Cir.1989); *In re Design Classics, Inc.,* 788 F.2d 1384, 1386 (8th Cir.1986). Nor would Phoenix have had standing to submit even a timely opposition to the lifting of the stay, since the stay is for the protection of the debtor and its creditors, 3 *Collier on Bankruptcy, supra,* ¶ 362.03, pp. 362–13 to 362–14, and Phoenix is neither.

■ Phoenix's further argument that the order lifting the automatic stay should be interpreted as limited to the insurance coverage is untimely and untenable. It is an inept as well as oblique way of attacking the settlement, which the bankruptcy court approved, sensibly enough, as being in the best interests of the bankrupt estate. See *Depoister v. Mary M. Holloway Foundation,* 36 F.3d 582, 585–88 (7th Cir.1994); *In re Martin,* 91 F.3d 389, 393 (3d Cir.1996); *In re Foster Mort-*

*gage Corp.,* 68 F.3d 914, 917 (5th Cir.1995). The settlement eliminated a potential claim against the estate (the Hamiltons' $2.3 million judgment against New Era), in exchange for giving up an equivalent claim against Phoenix. It was not a straight swap, because the estate retained a piece of the claim against Phoenix. So the estate came out ahead.

Not only is Phoenix's appeal frivolous, just like Hebrank's; but, again like Hebrank, Phoenix or its attorneys appear to be skating on dangerously thin ice from an ethical standpoint. What is Phoenix doing hiring its opponent's lawyer to sell out the opponent? See *Wheeler v. Heckler,* 787 F.2d 101, 104 n. 1 (3d Cir.1986); *People v. Rivers,* 933 P.2d 6, 7 (Colo.1997); *In re Maternowski,* 674 N.E.2d 1287, 1290–92 (Ind.1996); ABA Model Rule of Professional Conduct 1.8(f). Its retention of Hebrank began innocently enough, when the Hamiltons sued New Era, and Phoenix, as New Era's insurer, took over the defense and needed a local lawyer to handle the matter. But once New Era and Phoenix became antagonists, because of New Era's bad-faith claim, Phoenix could not continue to control the representation of New Era through the lawyer that it had hired. It is one thing for the insurer, pursuant to its duty to defend, to pick up the tab for the insured's lawyer; that is fine, *id.* at 1.7, comment 10; *Maryland Casualty Co. v. Peppers,* 64 Ill.2d 187, 355 N.E.2d 24, 30–31 (1976); *Illinois Municipal League Risk Management Ass'n v. Seibert,* 223 Ill.App.3d 864, 166 Ill.Dec. 108, 585 N.E.2d 1130 (1992); *Nandorf, Inc. v. CNA Ins. Cos.,* 134 Ill. App.3d 134, 88 Ill.Dec. 968, 971–72, 479 N.E.2d 988, 991–92 (1985). But as the cases we have just cited make clear, the insurer must, unless the insured consents, relinquish all control over the lawyer once insurer and insured turn out to have antagonistic interests. The only person who could consent on New Era's behalf was Samson, who we believe (but again we do not wish to prejudge matters only imperfectly disclosed by the existing record) has not consented. So we shall issue to Phoenix a rule to show cause why it should not be sanctioned for filing a frivolous appeal and to Phoenix's counsel (other than Hebrank, recipient of his own rule to show cause) a rule to show cause why

they should not be sanctioned for unethical conduct. New Era's appeal is dismissed, and the order that Phoenix has appealed from is affirmed.