# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 02-2460

DOROTHY JEAN BURDEN-MEEKS and SHERYL PEREZ,

*Plaintiffs-Appellees*,

v.

DWIGHT WELCH and CITY OF COUNTRY CLUB HILLS,

*Defendants*.

APPEAL OF:

INTERGOVERNMENTAL RISK MANAGEMENT AGENCY

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 4754—**Milton I. Shadur**, *Judge*.

_____

ARGUED DECEMBER 11, 2002—DECIDED FEBRUARY 10, 2003

_____

Before COFFEY, EASTERBROOK, and DIANE P. WOOD,
*Circuit Judges*.

EASTERBROOK, *Circuit Judge*.    Plaintiffs used to be
employees of Country Club Hills, a city in Illinois. They
contend in this suit under 42 U.S.C. §1983 that Mayor
Dwight Welch fired them for political reasons, violating the
first amendment as it has been understood since *Elrod v.
Burns*, 427 U.S. 347 (1976). Resolution of that claim has
been delayed by a dispute about access to a document pre-

pared for the Intergovernmental Risk Management Agency (IRMA), a body created by modestly sized municipalities in northeastern Illinois to pool their liability risks. The Constitution of Illinois (see Art. VII §10) permits municipalities to form intergovernmental cooperative agencies, of which IRMA is one.

The document in question was written by IRMA's lawyers after it asked them to investigate whether Country Club Hills is doing enough to curtail litigation exposure. This is a vital question, for insurance creates moral hazard: when someone else pays the tab, the insured will take additional risks and may incur costs deliberately. The other 72 members of IRMA do not want to make it cheap for the Mayor of Country Club Hills to violate the Constitution, knowing that only $^1/_{73}$ of the consequences will be borne by the local taxpayers. Plaintiffs believe that the report contains information that will help them prevail against the City. IRMA responded to the plaintiffs' subpoena, see Fed. R. Civ. P. 34(c), 45, by invoking the attorney-client privilege. Because plaintiffs' claim arises under federal law, this assertion of privilege also depends on federal law. See Fed. R. Evid. 501.

Federal law extends the privilege to communications about legal subjects, and it is hard to see why a business evaluation meets that description. Hiring lawyers to do consultants' work does not bring a privilege into play. But the district judge did not decide whether this report had a component of legal advice, because he held that IRMA had waived any claim of privilege by sharing the report with the Mayor—the defendant in this suit. Knowing disclosure to a third party almost invariably surrenders the privilege with respect to the world at large; selective disclosure is not an option. See, e.g., *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1126-27 (7th Cir. 1997); *United States v. Hamilton*, 19 F.3d 350, 353 (7th Cir. 1994). (One court of appeals thinks that disclosure to a regulatory body does not surrender the privilege with respect to other private per-

sons, see *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977) (en banc); see also *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 307-14 (6th Cir. 2002) (Boggs, J., dissenting); but the majority view is otherwise, and at all events the Mayor of Country Club Hills was not acting as IRMA's regulator.) Disclosure to the Mayor also took care of IRMA's contention that the report was covered by a "self-critical analysis privilege"—a privilege never recognized in this circuit, and pointless if it too was waived. The district judge added for good measure that the report was not *self*-critical—it examined the operations of Country Club Hills, not the operations of IRMA itself—and ordered IRMA to give plaintiffs a copy.

Instead of either complying or refusing to do so as a prelude to a citation in contempt of court, the normal way to obtain appellate review of such an order, see *United States v. Ryan*, 402 U.S. 530 (1971); *Cobbledick v. United States*, 309 U.S. 323 (1940), IRMA immediately filed a notice of appeal. Because the district court's order is not a final decision under normal standards, see 28 U.S.C. §1291, we directed the parties to file supplemental briefs addressing the question whether we have appellate jurisdiction. IRMA analogized the situation to that in *Perlman v. United States*, 247 U.S. 7 (1918), which held that a party claiming a privilege may appeal immediately when the judge directs a non-party holding the documents to disclose them. The idea behind *Perlman* is that someone who is neither a party to the suit nor a person aggrieved by the disclosure cannot be expected to put his own neck on the chopping block, standing in contempt of court just to help the privilege holder obtain appellate review. See *Church of Scientology v. United States*, 506 U.S. 9, 18 n.11 (1992) ("a discovery order directed at a *disinterested* third party is treated as an immediately appealable final order because the third party presumably lacks a sufficient stake in the proceeding to

risk contempt by refusing compliance") (emphasis added). IRMA, however, is not disinterested; it asserts a privilege on its own behalf.

When documents are sought from the entity that claims the privilege, there is every reason to insist that it go through the contempt process, which by raising the stakes helps the court winnow strong claims from delaying tactics that, like other interlocutory appeals, threaten to complicate and prolong litigation unduly. See *Powers v. Chicago Transit Authority*, 846 F.2d 1139 (7th Cir. 1988). And, independent of how we may evaluate arguments pro and con, there is the holding of *Ryan* that (subject to the *Perlman* proviso and another exception limited to the President of the United States, see *United States v. Nixon*, 418 U.S. 683, 690-92 (1974)) non-parties *must* wait for a contempt citation. Cf. *Kerr v. United States District Court*, 426 U.S. 394 (1976) (mandamus not available to escape the rule barring appeal of orders requiring the production of documents said to be privileged). Courts recognize one distinction between appeals by parties and appeals by non-parties: parties must wait until the end of the case or a finding of criminal contempt, while non-parties may appeal from a finding of civil contempt. See Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 15B *Federal Practice and Procedure* §3914.23 at 140, 143 & n.44 (2d ed. 1992) (collecting authority). IRMA has not been found in any kind of contempt, however; it has done nothing to demonstrate that it possesses the sort of vital interest that justifies prolongation of a suit by interlocutory review.

Despite all of this, IRMA still holds a trump card: *Dellwood Farms* holds that non-parties always may appeal immediately when they contest discovery orders. The discussion is brief—just a single sentence—but it is a square holding. We wrote: "When the order is directed against a nonparty, as it is here, [the nonparty] has no appellate

remedy at the end of the litigation, so he is entitled to appeal immediately." 128 F.3d at 1125. *Dellwood Farms* did not discuss the possibility of obtaining review through the contempt process, nor did it mention *Ryan*, *Cobbledick*, or similar decisions. Nor did it recognize that other circuits have resolved the same question against appellate jurisdiction. See, e.g., *In re Grand Jury Subpoenas*, 123 F.3d 695, 698 (1st Cir. 1997) (collecting cases); *In re Attorney General of the United States*, 596 F.2d 58 (2d Cir. 1979) (holding that even a member of the Cabinet must be cited for contempt of court before a court of appeals will review a discovery order). Instead *Dellwood Farms* cited three appellate opinions—*Ivey v. Harney*, 47 F.3d 181, 183 (7th Cir. 1995); *Frazier v. Cast*, 771 F.2d 259, 262 (7th Cir. 1985); and *Boughton v. Cotter Corp.*, 10 F.3d 746, 749 (10th Cir. 1993)—that suggest the risks of excessive generalization.

*Ivey* did not entail a discovery dispute; instead a warden was appealing from a writ of habeas corpus ad testificandum, and to the extent the issues were related to discovery it was cousin to *Perlman* (for the warden, having no interest in the underlying suit, was not about to risk a contempt citation). *Frazier* likewise did not concern the assertion of privilege by a party resisting discovery; it took up an appeal by a lawyer sanctioned for violating Fed. R. Civ. P. 11. What is more, after we issued *Dellwood Farms* the Supreme Court scuttled *Frazier* (and decisions like it in other circuits) by holding that an attorney may *not* appeal immediately from an award of sanctions. See *Cunningham v. Hamilton County*, 527 U.S. 198 (1999). *Boughton*, alone of the three opinions cited by *Dellwood Farms*, deals with an interlocutory appeal by someone whose claim of privilege has been rejected by a district judge—but it holds that courts of appeals *lack* jurisdiction in this situation. The Tenth Circuit collected decisions from many federal appellate courts to the effect that neither the collateral order doctrine nor a related "pragmatic finality doctrine" enables

parties to appeal immediately. In passing, *Boughton* remarked that an earlier decision, *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993 (10th Cir. 1965), had permitted appeal by a non-party—but it also observed that *Covey* and similar decisions are of doubtful value in light of *Ryan*.

The most one can say for *Dellwood Farms* is that *Covey Oil* and similar cases in the Tenth Circuit, though questioned in *Boughton*, have not been overruled. That may not have been enough (given *Ryan* and the many decisions in other circuits applying it beyond the grand jury context) to justify our adopting the approach of *Covey Oil*, but it counsels against our overruling *Dellwood Farms*—for, unless the Tenth Circuit also overrules decisions along *Covey Oil*'s lines, a conflict will remain. Indeed, no matter what we (or the Tenth Circuit) do, a conflict will persist—for in recent years some circuits have allowed even *parties* to appeal immediately from orders rejecting assertions of privilege. Non-parties, which cannot appeal from the final decision following sanctions, other than contempt, under Fed. R. Civ. P. 37, logically have appellate rights at least as extensive as parties do. The most recent of these decisions is *United States v. Philip Morris Inc.*, 2003 U.S. App. LEXIS 138 (D.C. Cir. Jan. 7, 2003), in which a divided panel held that a party's inability to appeal from an order of civil contempt justifies allowing it to appeal from the discovery order itself. The D.C. Circuit recognized that it was adopting a minority view, and like *Dellwood Farms* it cited neither *Ryan* nor any of the Supreme Court's other cases limiting appeals from discovery orders. Left to our own devices, we would be inclined to agree with Judge Randolph's dissent in *Philip Morris*. But the existence of this decision, and a few like it elsewhere, means that we cannot bring harmony by overruling *Dellwood Farms*. Appellate approaches to this topic are now so disparate that only Congress or the Supreme Court could clear the air. So in-

stead of fussing over jurisdiction, we take circuit law as we found it and resolve the appeal.

The merits are not complex: the district judge was on the mark, for the reasons he gave. When IRMA showed the Mayor a copy of the report, it waived any privilege it possesses—which makes it unnecessary to decide whether a "self-critical analysis privilege" exists or (if it does) covers criticism of an organization's members. Many decisions caution against the creation of new privileges, even for what appear to be good reasons, see *University of Pennsylvania v. EEOC*, 493 U.S. 182, 189 (1990), but even the most powerful reasons for a novel privilege would not carry the day once the document had been disclosed voluntarily.

IRMA contends that each of its members is really *part* of IRMA, and that passing a document around within an organization (say, to a corporation's board of directors, or the executive committee of a partnership) does not relinquish any privilege otherwise available. That's true enough for dissemination within the top echelon of a single organization, but Welch is Mayor of Country Club Hills, not Mayor (or any other officer) of IRMA. Welch does not wield any executive authority in IRMA either *ex officio* or otherwise.

Illinois treats IRMA as a public entity rather than an insurer and thinks of the municipalities more like members of a reinsurance pool than like normal insureds. See *Lombard v. IRMA*, 288 Ill. App. 3d 1003, 1012, 681 N.E.2d 88, 94-95 (2d Dist. 1997); *Aetna Casualty & Surety Co. v. James J. Benes & Associates, Inc.*, 229 Ill. App. 3d 413, 593 N.E.2d 1087 (2d Dist. 1992). Yet this does not imply that IRMA and its members are alter egos—and, without that equation, disclosure to Mayor Welch was disclosure outside IRMA. Illinois permits risk pools to expel members (consideration of this possibility is why IRMA ordered up the report), which establishes that IRMA and the City are differ-

ent entities. A neighborhood is part of a city; but a city is not "part of" IRMA in any remotely similar way. IRMA concedes that the Mayor was not *entitled* to see the report, which is another strong indicator that IRMA and the City are distinct for purposes of Illinois law. Finally, whether or not a judgment entered against Country Club Hills in this case could be enforced directly against assets IRMA holds, it could not be enforced by executing on the assets of IRMA's other 72 member cities. This demonstrates that Illinois does not treat IRMA and its participants as alter egos or even as a partnership. Consequently, there is no way the City can have the report while plaintiffs do not. IRMA's concern that its members would not cooperate in investigations if it could not conceal investigatory reports from outsiders is unjustified for two reasons: first, a noncooperator can be ejected on that account; second, IRMA is free to reveal to a city the substance of the attorney's conclusions while keeping the report itself secret.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*