In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-3344

SANDRA T.E., et al.,

*Plaintiffs-Appellees,*

*v.*

SOUTH BERWYN SCHOOL DISTRICT 100,

*Defendant-Appellant,*

and

SIDLEY AUSTIN LLP,

*Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05-CV-473—**William J. Hibbler**, *Judge.*

ARGUED FEBRUARY 24, 2009—DECIDED FEBRUARY 25, 2009[*]
OPINION MARCH 30, 2010

Before ROVNER, WOOD, and SYKES, *Circuit Judges.*

_____

[*] With a notation that an opinion would follow.

SYKES, *Circuit Judge.*     An elementary-school music teacher in the South Berwyn School District 100 was charged with sexually molesting numerous students over a period of several years during his tenure in the district. Some of the victims brought this civil lawsuit against the District and a school principal who allegedly knew about the abuse long before the charges were filed but did not take appropriate responsive action. Reacting to the criminal charges and the filing of the civil suit, the School Board hired attorneys from Sidley Austin LLP to conduct an internal investigation and provide legal advice to the Board. As part of this investigation, Sidley attorneys interviewed many current and some former school-district employees and third-party witnesses. These interviews were not recorded. Instead, the attorneys took handwritten notes and later drafted memoranda summarizing the interviews. Sidley delivered its findings and legal advice to the School Board in an oral report and a written executive summary, but has not represented the defendants in this litigation.

During discovery the plaintiffs issued a subpoena for the documents in Sidley's possession relating to its District 100 investigation. Relying on the attorney-client privilege and the work-product doctrine, Sidley declined to produce its notes and internal memoranda relating to the employee and witness interviews and other legal memoranda prepared in connection with the investigation. On the plaintiffs' show-cause motion, the district court concluded that Sidley had been hired to provide investigative services, not legal services, and ordered the firm to produce the documents. Sidley appealed.

Immediately following oral argument, we issued an expedited order reversing the district court and holding that the law firm's documents were protected by the attorney-client privilege and the work-product doctrine. This opinion explains the rationale behind that summary order and also addresses an intervening development regarding the scope of the collateral-order doctrine, which supplied our jurisdiction to immediately review the district court's order.

## I. Background

In January 2005 police arrested Robert Sperlik, an elementary-school band teacher employed by District 100, on charges that he had repeatedly sexually abused numerous female students ages nine to twelve. Sperlik would tie up or bind the girls with duct tape during private lessons and then sexually molest them; the abuse began in 1998 and continued until Sperlik's arrest in early 2005. Sperlik eventually confessed to the crimes and was convicted and sentenced to 20 years in prison. Some of Sperlik's victims told police they had reported the abuse to the school principal after it occurred, but the principal failed to take appropriate action against Sperlik. On January 26, 2005, shortly after Sperlik's arrest, some of the victims and their families filed this civil lawsuit against District 100 and the school principal who was alleged to have been deliberately indifferent to the ongoing sexual abuse; they asserted claims under 42 U.S.C. § 1983, 20 U.S.C. § 1681 (Title IX of the Education Amendments of 1972), and various state laws.

As news of Sperlik's arrest became known, the families of District 100 students were understandably outraged at the extent and duration of the teacher's crimes and the possibility that the school administration knew about the sexual abuse but had failed to respond. Reacting to the criminal charges, the public outcry, and the filing of the civil lawsuit, the School Board retained the law firm of Sidley Austin LLP (then Sidley Austin Brown & Wood LLP) to conduct an internal investigation.[1] The School Board wanted Sidley to review the criminal charges filed against Sperlik, investigate the actions of school administrators in response to the allegations of sexual abuse, examine whether any district employees had failed to comply with district policies or federal or state law, and analyze the effectiveness of the District's existing compliance procedures. According to the February 4, 2005 engagement letter between Sidley and the School Board, Sidley was to "investigate the response of the school administration to allegations of sexual abuse of students" and to "provide legal services in connection with" the investigation. Scott Lassar, a partner at Sidley and a former U.S. Attorney for the Northern District of Illinois, spearheaded the investigation.

On the same day the engagement letter was issued, the School Board president and superintendent of schools

---

[1] At the time the School Board requested the internal investigation, only the School District, Sperlik, and the principal of the elementary school that employed Sperlik were named as defendants. The individual members of the School Board were added as defendants in March 2006.

sent a joint letter to parents announcing the District's retention of Lassar to conduct the investigation. Ten days later the superintendent sent another more detailed letter to parents explaining that the investigation had begun and would be completed as soon as possible. As the investigation proceeded, attorneys from Sidley interviewed many school-district employees, including current and former principals, social workers, administrative employees, and members of the School Board. Sidley also interviewed a handful of third parties who had never been employed by the School District. None of the interviews were recorded. Instead, the attorneys took notes of the witnesses' answers and later prepared written memoranda memorializing the interviews for future use in Sidley's legal advice to the Board. These notes and memoranda are the subject of the present discovery dispute.

Lassar and a Sidley colleague delivered an oral report of the firm's findings at a closed executive session of the Board in April 2005, and later that month delivered a written "Executive Summary"—marked "Privileged and Confidential," "Attorney-Client Communication," and "Attorney Work Product"—to the Board. This concluded Sidley's engagement; other lawyers have represented the defendants throughout this litigation.

In the fall of 2006, the plaintiffs launched a discovery effort aimed at forcing the disclosure of the contents of Sidley's investigation. They subpoenaed Lassar to appear for a deposition and to produce documents in the firm's possession relating to Sidley's work for the School Board.

After a motion to quash was denied, Sidley turned over more than a thousand pages of documents. But the firm withheld its notes and memoranda from the witness interviews and other internal legal memoranda prepared in connection with the investigation. These documents, Sidley asserted, were protected by the attorney-client privilege and the work-product doctrine. The plaintiffs moved to compel production of the missing documents. After a series of hearings—of which Sidley had only informal notice and no opportunity to file a brief—the district court ordered the School Board to disclose any documents relating to Sidley's investigation that it had in *its* possession. The judge concluded that the Board hired Lassar "as an investigator, not as an attorney," and therefore the attorney-client privilege did not apply. The court later deferred ruling on the question of the documents in Sidley's possession: "If the plaintiffs insist that there [are] other documents or other information which they are entitled to which you have not turned over to the board, that's a different issue. We haven't gotten to that issue."

When it became clear that Sidley, not the School Board, had the documents the plaintiffs wanted, the plaintiffs turned their attention back to Sidley. They served a second subpoena on Lassar, essentially a duplicate of the first. Sidley responded by again asserting that the documents were protected by the attorney-client privilege and the work-product doctrine. The plaintiffs then filed a Motion for a Rule to Show Cause asking the court to hold Lassar in contempt. This time the court solicited briefing on the privilege and work-product claims, and the engage-

ment letter between Sidley and the Board and other evidence about the nature of Sidley's engagement was brought before the court. After another hearing the court declined to commence contempt proceedings because Sidley had not yet been ordered to comply with the subpoena. But the court summarily rejected Sidley's attorney-client privilege and work-product claims and ordered the firm to produce the documents: "[T]he Court's prior ruling [regarding] attorney client privilege [will] stand. . . . The materials requested by Plaintiffs [should] be produced in accordance with the Court's prior ruling." Sidley moved for reconsideration, but this motion was denied. Sidley and District 100 appealed.[2]

## II. Discussion

### A. Appellate Jurisdiction under the Collateral-Order Doctrine

Before proceeding to the merits of Sidley's arguments, we pause to address a recent development in the caselaw governing the collateral-order doctrine, which supplied our jurisdiction to hear an immediate appeal of the district court's disclosure order. In *Mohawk Industries, Inc. v. Carpenter*, 130 S. Ct. 599, 603 (2009), the Supreme Court held that discovery disclosure orders adverse to the

---

[2] A different panel of this court recently resolved a separate appeal by the school principal involving her claim of qualified immunity. *Sandra T.E. v. Grindle*, No. 09-2920, 2010 WL 938047 (7th Cir. Mar. 17, 2010) (affirming denial of qualified immunity).

attorney-client privilege do not qualify for immediate appeal under the collateral-order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949). Resolving a circuit split, the Court held that "[p]ostjudgment appeals, together with other review mechanisms, suffice to protect the rights of litigants and preserve the vitality of the attorney-client privilege." *Mohawk Industries*, 130 S. Ct. at 603.

*Mohawk Industries,* however, concerned the question whether *a party* may immediately appeal a disclosure order adverse to its claim of attorney-client privilege. The order at issue here was against a *nonparty* to the litigation; we have previously held that unlike a party, a nonparty subject to a discovery order has no remedy at the end of the litigation and so may obtain immediate review of a discovery order rejecting a privilege claim. *See Burden-Meeks v. Welch*, 319 F.3d 897, 900-01 (7th Cir. 2003). *Burden-Meeks* adhered to an existing line of circuit cases, the most recent of which was *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997); the opinion, however, noted a division in the circuits on the question of a nonparty's right to immediately appeal a discovery order. *Burden-Meeks*, 319 F.3d at 900-01. It is unclear whether our circuit's approach to this question—affirmed but questioned in *Burden-Meeks*—survives the holding and rationale of *Mohawk Industries*. But because our expedited order issued before *Mohawk Industries* was decided and at a time when our circuit law permitted an immediate appeal, we simply note the issue for the future but need not resolve it here.

**B. Attorney-Client Privilege and Work-Product Doctrine**

Sidley claims that the interview notes and legal memoranda its attorneys prepared in connection with the District 100 investigation are protected from disclosure by both the attorney-client privilege and the work-product doctrine. The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice. *See Upjohn Co. v. United States*, 449 U.S. 383, 394-99 (1981); *Trammel v. United States*, 445 U.S. 40, 51 (1980). The privilege belongs to the client, although an attorney may assert the privilege on the client's behalf. *See United States v. Smith*, 454 F.3d 707, 713 (7th Cir. 2006). The work-product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case. *See* FED. R. CIV. P. 26(b)(3); *United States v. Nobles*, 422 U.S. 225, 238-39 (1975); *United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007). Unlike the attorney-client privilege, the attorney has an independent privacy interest in his work product and may assert the work-product doctrine on his own behalf; the doctrine's protection is not waived simply because the attorney shared the information with his client. *See Hobley v. Burge*, 433 F.3d 946, 949-50 (7th Cir. 2006).

To determine if a communication falls within the protection of the attorney-client privilege, we ask: (1) whether "legal advice of any kind [was] sought . . . from a professional legal adviser in his capacity as such"; and (2) whether the communication was "relat[ed] to that

purpose" and "made in confidence . . . by the client." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). It appears that the district court assumed that when an attorney performs investigative work, he is not acting as an attorney for purposes of the privilege; this raises a legal issue about the scope of the privilege, so our review is de novo.[3] *See Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007) (questions about scope of attorney-client privilege reviewed de novo); *see also Better Gov't Bureau, Inc. v. McGraw (In re Allen)*, 106 F.3d 582, 601 (4th Cir. 1997) (classifying an error of the kind alleged in this case as a "legal one").

The judge's decision in this case developed over a series of hearings and numerous minute orders. As we have noted, Sidley was not provided formal notice and an opportunity to present a case for the privilege prior to the first two of these hearings; only after the plaintiffs moved for a contempt sanction against Lassar was Sidley given formal notice and an opportunity to brief the issue. It appears the judge was influenced in the earlier

---

[3] The plaintiffs argue that the determination of whether an attorney was acting as an attorney should be subject to clear-error review. In this case, as we explain below, the court's error was a legal one: The court implicitly assumed that an attorney hired to conduct an investigation never acts in his capacity as an attorney. *See, e.g.*, *Better Gov't Bureau, Inc. v. McGraw (In re Allen)*, 106 F.3d 582, 601 (4th Cir. 1997). Thus, we review the court's order de novo. We nonetheless note that even under a clear-error standard, we would reverse the district court's order.

hearings by the letters the school superintendent and Board president sent to parents reassuring them of the District's desire to discover the truth about the circumstances surrounding Sperlik's abuse and announcing the Board's decision to retain Lassar to "conduct a thorough investigation." In the judge's view, these statements pointed to the conclusion that Sidley was hired as an investigator, and as such, the privilege did not apply.

Later on, in the proceedings on the plaintiffs' Motion for a Rule to Show Cause against Lassar, the judge all but ignored the engagement letter, which should have been the most important piece of evidence. The engagement letter between Sidley and the School Board explained that Sidley had been hired to "investigate the response of the school administration to allegations of sexual abuse of students" *and* "provide legal services in connection with the specific representation." There is no indication that the judge actually considered the engagement letter when it was brought to the court's attention in these later proceedings; rather, the judge simply reiterated his earlier ruling that Sidley had been hired as an investigator and the privilege therefore did not apply.

This oversight was a mistake; the engagement letter brings this case squarely within the Supreme Court's decision in *Upjohn*, which explained that factual investigations performed by attorneys *as attorneys* fall comfortably within the protection of the attorney-client privilege. In *Upjohn* a corporation's in-house counsel investigated the role of some of the corporation's employees in

making potentially illegal payments to foreign governmental officials; this investigation included interviews with corporate officers and employees. A separate federal tax inquiry into the alleged misconduct was pending, and federal investigators attempted to obtain the results of the corporation's internal investigation by issuing a summons for documents memorializing the employees' interviews with the corporation's in-house counsel. The Supreme Court held that the attorney-client privilege applied. *Upjohn*, 449 U.S. at 401.

The Court began by noting that "[t]he first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." *Id.* at 390-91; *see also Trammel*, 445 U.S. at 51 ("The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out."). The Court held that because "[t]he communications at issue were made by Upjohn employees to counsel for Upjohn acting as such, at the direction of corporate superiors in order to secure legal advice from counsel," the "communications must be protected against compelled disclosure." *Upjohn*, 449 U.S. at 394-95. The federal investigators could not force disclosure of the notes and other documents made by the in-house counsel to discover what the employees had said but instead must interview the employees themselves. *Id.* at 396.

Following *Upjohn*, other circuits have concluded that when an attorney conducts a factual investigation in

connection with the provision of legal services, any notes or memoranda documenting client interviews or other client communications in the course of the investigation are fully protected by the attorney-client privilege. *See, e.g.*, *In re Allen,* 106 F.3d at 603 ("The relevant question is not whether [the attorney] was retained to conduct an investigation, but rather, whether this investigation was related to the rendition of legal services." (internal quotation marks omitted)); *United States v. Rowe*, 96 F.3d 1294, 1297 (9th Cir. 1996) (emphasizing that *Upjohn* made "clear that fact-finding which pertains to legal advice counts as 'professional legal services'"). For example, in *In re Allen*, 106 F.3d 582, the Fourth Circuit confronted a district-court ruling virtually identical to the one at issue in this case. There, the district court had concluded that a special counsel hired by the West Virginia Attorney General to conduct an investigation into alleged misconduct within the state Department of Justice was acting as an investigator and not an attorney because various client letters described the attorney's work as an "investigation." In reversing, the Fourth Circuit noted that "clients often do retain lawyers to perform investigative work because they want the benefit of a lawyer's expertise and judgment," and "if a client retains an attorney to use her legal expertise to conduct an investigation, that lawyer is indeed performing legal work." *Id.* at 604.

The same is true here. The engagement letter spells out that the Board retained Sidley to provide legal services in connection with developing the School Board's response to Sperlik's sexual abuse of his students. Sidley's investigation of the factual circumstances sur-

rounding the abuse was an integral part of the package of legal services for which it was hired and a necessary prerequisite to the provision of legal advice about how the District should respond. Although an engagement letter cannot reclassify nonprivileged communications as "legal services" in order to invoke the attorney-client privilege, *see Burden-Meeks*, 319 F.3d at 899 (business advice cannot be considered legal services), the conduct of Sidley attorneys during the investigation confirms that they were acting in their capacity as attorneys. During the confidential interviews with school-district employees, the attorneys provided so-called "*Upjohn* warnings" emphasizing that Sidley represented the School Board and not the employee and that the School Board had control over whether the conversations remained privileged. No third parties attended the interviews, the School Board received Lassar's report of the firm's findings during an executive session not open to the public, and the written executive summary that Sidley turned over to the Board was marked "Privileged and Confidential," "Attorney-Client Communication," and "Attorney Work Product." If more were needed, affidavits submitted into the record by Lassar, his Sidley colleagues, and the School Board president emphasized that Sidley had been hired to provide legal advice in the context of the facts it uncovered during the internal investigation. Because the Sidley lawyers were hired in their capacity as lawyers to provide legal services—including a factual investigation—the attorney-client privilege applies to the communications made and documents generated during that investigation.

The fact that the privilege is invoked to protect com-munications made by employees of a governmental entity rather than a private party does not change the anal-ysis. The plaintiffs suggest that shielding the contents of Sidley's interviews with school-district personnel—paid for by the taxpayers and involving a matter of grave public concern—is contrary to the public interest and should not be permitted. We have previously held that the privilege does not apply to communications between a state officeholder and his state-government attorney when the attorney is subpoenaed to give testimony before a federal grand jury. *See In re: A Witness Before the Special Grand Jury 2000-2*, 288 F.3d 289 (7th Cir. 2002) (general counsel to Illinois governor could not assert attorney-client privilege to avoid giving grand-jury testimony against governor). But we did not articulate in *In re: A Witness* a generally applicable exception for communications between governmental employees and taxpayer-paid counsel.

This is a civil case for damages against a local unit of government and certain individual public employees, not a grand-jury proceeding. Although the allegations are very serious and there are important public as well as private interests at stake, we think the policies under-lying the attorney-client privilege have their normal application. *See Ross v. City of Memphis*, 423 F.3d 596, 603 (6th Cir. 2005) ("The civil context presents different concerns because government[al] entities are frequently exposed to civil liability. The risk of extensive civil liability is particularly acute for municipalities, which do not enjoy sovereign immunity."). Of course, the attorney-

client privilege protects not only the attorney-client relationship in imminent or ongoing litigation but also the broader attorney-client relationship outside the litigation context. Confidential legal advising promotes the public interest "by advising clients to conform their conduct to the law and by addressing legal concerns that may inhibit clients from engaging in otherwise lawful and socially beneficial activities." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). This is true for public clients no less than private ones. The public interest is best served when agencies of the government have access to the confidential advice of counsel regarding the legal consequences of their past and present activities and how to conform their future operations to the requirements of the law. *See also Ross*, 423 F.3d at 603 ("[G]overnment[al] entities are well-served by the privilege [in the civil context], which allows them to investigate potential wrongdoing more fully and, equally important, pursue remedial options.").

The work-product doctrine also protects the materials at issue here from disclosure; and to the extent some of the witnesses interviewed by Sidley attorneys were not district employees, this is an independent rather than a duplicate source of protection.[4] Codified at Rule 26(b)(3)

---

[4] Everyone in this appeal assumes that the attorney-client privilege applies to statements made by witnesses regardless of whether they were currently employed by the School District at the time they were interviewed. An argument could be made that the attorney-client privilege does not protect

(continued...)

of the Federal Rules of Civil Procedure, the work-product doctrine is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495 (1947).

The district court's conclusion that the work-product doctrine did not apply was subsumed in its conclusion that Sidley was hired as an investigator, not an attorney, and therefore its notes of witness interviews and related documents were not protected. We rejected this conclusion in the context of a work-product claim in *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487 (7th Cir. 1970). *See id.* at 492 ("Where an attorney personally prepares a memorandum of an interview of a witness with an eye toward litigation[,] such memorandum

---

[4] (...continued)

statements made in conversations with former employees, although every circuit to address this question has concluded that the distinction between present and former employees is irrelevant for purposes of the attorney-client privilege. *See In re Allen*, 106 F.3d at 605-07; *City of Long Beach v. Standard Oil Co. of Cal. (In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.)*, 658 F.2d 1355, 1361 n.7 (9th Cir. 1981). We need not decide this question because it makes no difference in this case; the work-product doctrine would protect any notes from interviews with former employees as equally as it protects notes from interviews with third parties who never worked for the School District.

qualifies as work product even though the lawyer functioned primarily as an investigator."). Work-product protection applies to attorney-led investigations when the documents at issue "can fairly be said to have been prepared or obtained because of the prospect of litigation." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976-77 (7th Cir. 1996) (internal quotation marks omitted). There is a distinction between precautionary documents "developed in the ordinary course of business" for the "remote prospect of litigation" and documents prepared because "some articulable claim, *likely* to lead to litigation, [has] arisen." *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1120 (7th Cir. 1983) (emphasis added) (alteration in original) (internal quotation marks omitted). Only documents prepared in the latter circumstances receive work-product protection.

The plaintiffs maintain that the Sidley investigation was only designed to quell public outrage and prevent similar occurrences in the future, but the record simply does not support that conclusion. The chronology of events confirms that Sidley was hired to conduct the District 100 investigation not merely in anticipation of *likely* litigation but in response to the *actual* filing of this lawsuit. True, the Board had other motivations as well—it *was* responding to the public distress about the allegations, the possible complicity of the school principal, and the urgent need to implement prospective protective measures—but this does not remove the investigation from the protection of the work-product doctrine. That Sidley was not the District's litigation counsel is not dispositive. Sidley's witness-interview notes

and memoranda were plainly prepared "with an eye toward" this pending litigation and therefore qualify for work-product protection.

In limited situations documents protected as attorney work product are nonetheless discoverable if a party can establish a "substantial need" for the documents and cannot obtain equivalent materials without "undue hardship." FED. R. CIV. P. 26(b)(3)(A)(ii). Disclosure of witness interviews and related documents, however, is particularly discouraged. *See, e.g.*, *Upjohn*, 449 U.S. at 398-99 ("Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes . . . ."). The plaintiffs suggest that they need Sidley's interview notes and memoranda for impeachment, but we have been extremely reluctant to allow discovery of attorney work product simply as impeachment evidence. *See, e.g.*, *Hauger v. Chi., Rock Island & Pac. R.R. Co.*, 216 F.2d 501, 508 (7th Cir. 1954) ("A court is not justified in ordering a litigant to permit his adversary to inspect witness statements, which he has procured in preparing for trial, upon the adversary's mere surmise or suspicion that he might find impeaching material in the statements."). The plaintiffs acknowledge that the information in Sidley's files would really only bolster already existing impeachment evidence contained in their own investigation or in the police record. Under these circumstances, the case for disclosure is particularly weak. *See Gay v. P. K. Lindsay Co.*, 666 F.2d 710, 713 (1st Cir. 1981) (statement in attorney's notes that could be used to impeach witness was not discoverable when witness could

have been deposed). The plaintiffs have fallen far short of showing they have a substantial need for the materials at issue here.

Finally, the plaintiffs contend that the defendants have waived any right to rely on the attorney-client privilege or the work-product doctrine because they failed to provide a detailed privilege log detailing the documents that were withheld. *See* FED. R. CIV. P. 26(b)(5) (requiring parties to claim the basis of the privilege and describe the nature of the privileged documents in a way that will allow other parties to assess the claim). The focus of this dispute, however, is not on documents in the *defendants'* possession but documents in *Sidley's* possession, and Sidley filed a proper privilege log adequately describing what it withheld.

REVERSED.