In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 23-2714 & 24-1029

SIGNAL FUNDING, LLC and SIGNAL FINANCIAL HOLDINGS LLC,

*Plaintiffs-Appellants*,

*v.*

SUGAR FELSENTHAL GRAIS & HELSINGER LLP, *et al.*,

*Defendants-Appellees*.

Appeals from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 1:17-cv-08816 — **Joan H. Lefkow,** *Judge.*

ARGUED SEPTEMBER 6, 2024 — DECIDED MAY 2, 2025

Before RIPPLE, SCUDDER, and ST. EVE, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Signal is a litigation funding company. One of its executives resigned to start a competing venture and, in the process of doing so, sought legal advice from Signal's outside counsel. What ensued was a protracted dispute between Signal, the executive, and the law firm.

Before us are claims Signal brought against the law firm and several of its attorneys. The district court resolved the

claims in favor of the firm and attorneys, some on a motion to dismiss and others at summary judgment. Signal now appeals from those rulings. The district court handled the case with great diligence and care through a series of detailed orders. We affirm across the board.

**I**

**A**

Litigation funding involves a financial arrangement where, in the typical circumstances, third parties unrelated to a lawsuit provide plaintiffs with capital to cover their costs. In return, the funder receives a portion of the settlement or judgment if the case is successful. Pre-settlement funding provides financial support while a lawsuit remains ongoing, while post-settlement funding occurs after a settlement has been reached but before plaintiffs receive their payout. Signal offers exclusively pre-settlement litigation funding services to its clients.

From July 2016 through September 2017, Farva Jafri held several executive positions at Signal. Sugar Felsenthal Grais & Helsinger LLP provided legal services to Signal throughout Jafri's tenure at the company.

In July 2017 an individual named Matthew Eager sent an inquiry to Signal's general email address. Eager ran an investment group and asked whether Signal took on outside investors or knew of any competitors who did. Jafri saw and forwarded the email to Signal's chief executive officer, Josh Wander, but Wander never responded to Eager.

Around this same time, Jafri began planning to start a competing litigation funding business of her own. While still employed by Signal, Jafri emailed Eager from her personal

email account in September 2017. She arranged a call with Eager, provided information regarding her new venture, and sought his investment. Jafri also solicited investments from Pete Karnowski, who managed another investment firm, and Brij Shah, a personal friend. Jafri told Karnowski she was working with Signal's chief marketing officer and represented that she had "staff and technology ready to go" to start the new venture.

Jafri resigned from Signal on September 28, 2017. She had a call with attorneys at Sugar Felsenthal the next day where they discussed, according to the law firm's timesheets, "pre- vs. post-settlement funding and various other matters." From there Sugar Felsenthal attorneys helped Jafri incorporate several new companies, and one attorney at the firm became the registered agent for three of those businesses.

Continuing to seek funding, Jafri emailed Eager on October 3 to flag the risk of potential litigation if he decided to invest in the competing venture. Jafri relayed that she had spoken with her "attorneys" and, according to them, any lawsuit filed by her "former investors" would be frivolous. The email itself did not reveal the names of those "attorneys" or "former investors." But Jafri later explained in an affidavit that her reference to "former investors" meant 777 Partners, LLC—an investment firm that is Signal's parent company and sole investor.

As to the "attorneys," Jafri denied that her reference was to Sugar Felsenthal. But evidence in the record suggests otherwise: Jafri had a call with attorneys at Sugar Felsenthal the same day she sent her October 3 email. What is more, she texted a former coworker two days later that Pete Karnowski wanted to move forward with an investment in the new

venture, with Jafri committing to "get our attorneys on it." When her coworker asked who the attorneys were, Jafri named Sugar Felsenthal.

Jafri's maneuver did not go unnoticed. In particular, Signal's general counsel, Edward Gehres, learned by mid-October 2017 that Jafri had sought legal advice from Sugar Felsenthal. He reacted by emailing Jonathan Friedland, a partner at Sugar Felsenthal, on October 19. Gehres explained that Jafri had refused to assist Signal during her transition out of the company and should be considered "adverse" to them. Gehres also asked whether Sugar Felsenthal had an attorney-client relationship with Jafri.

Friedland replied the next day, October 20, stating, "[N]o, there was no point in time at which [Sugar Felsenthal] represented [Jafri] in a manner adverse to Signal. If you are also asking the broader question of whether we represent [Jafri] on other matters, I cannot answer that."

Friedland emailed again on October 27, terminating Sugar Felsenthal's attorney-client relationship with Signal. Jafri had asked the law firm to "represent her in matters unrelated to Signal," Friedland explained, and Jafri's "future endeavors may not be completely unrelated to the space in which Signal operates." "While not an ethical conflict," he continued, it was "a business conflict" that warranted choosing between Signal and Jafri. Sugar Felsenthal chose Jafri.

Between November 2017 and June 2018, Jafri received several investments in her new venture, including $120,000 from her personal friend Brij Shah and $350,000 from Matthew Eager's investment group. Eager also committed to investing

another \$250,000. Pete Karnowski's investment group ultimately decided not to invest.

B

In time, Signal brought suit in federal district court against Jafri, several of Jafri's corporate entities, Signal's former chief marketing officer who resigned to join Jafri, Sugar Felsenthal, and four attorneys from the law firm (Jonathan Friedland, Vanessa Schoenthaler, Etahn Cohen, and Elizabeth Vandesteeg). This appeal concerns only Signal's claims against Sugar Felsenthal and the attorneys—Illinois state law claims for legal malpractice, breach of contract, breach of fiduciary duty, and fraud and fraudulent concealment.

Signal alleges that Sugar Felsenthal impermissibly had an attorney-client relationship with the company and, at the same time, Farva Jafri. Sugar Felsenthal breached its contract with and ethical duties to the company, Signal continues, by advising Jafri on directly adverse matters, foremost counselling Jafri on potential litigation involving Signal and helping her set up the competing companies. Signal further contends that Sugar Felsenthal committed fraud by lying about and concealing its representation of Jafri. And Sugar Felsenthal's actions injured Signal, the company insists, by causing it to wrongfully incur legal fees and lose outside investments.

The district court issued a series of rulings that are pertinent to this appeal.

*Motion to Dismiss.* The district court granted Sugar Felsenthal's motion to dismiss Signal's breach of fiduciary duty claim under Federal Rule of Civil Procedure 12(b)(6). The district court effectively bifurcated the fraud and fraudulent concealment claim, dismissing the fraudulent concealment

theory of liability but allowing the fraudulent misrepresentation theory—along with the legal malpractice and breach of contract claims—to proceed to summary judgment. Finally, the district court granted the defendants' motion to strike the request for punitive damages as to the remaining fraudulent misrepresentation component of the fraud claim.

*Motion to Compel.* During discovery Signal deposed Jonathan Friedland of Sugar Felsenthal. Friedland testified that in preparation for his deposition he reviewed a December 2017 memorandum, which he wrote to memorialize particular facts in anticipation of potential litigation with Signal. The magistrate judge denied Signal's motion to compel production of the memorandum, and the district court affirmed.

*Summary Judgment.* The district court granted summary judgment in favor of Sugar Felsenthal and its four attorneys on the legal malpractice claim, breach of contract claim, and fraudulent misrepresentation theory of the fraud claim. This disposed of all remaining claims against the law firm and attorneys.

Signal's appeal followed.

## II

We begin with a word on our own jurisdiction. Although claims against other defendants remained pending, the district court granted a motion under Federal Rule of Civil Procedure 54(b) to make final and appealable its grant of summary judgment on all claims against Sugar Felsenthal and the four attorneys. See Fed. R. Civ. P. 54(b) ("When an action presents more than one claim for relief … or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties

only if the court expressly determines that there is no just reason for delay."). But the district court did not expressly "direct the entry of final judgment," as required by Rule 54(b). Signal nevertheless filed an interlocutory appeal from the grant of summary judgment. We then docketed this appeal and assigned it case number 23-2714.

The remainder of the case proceeded against other defendants in the district court and culminated in a final judgment. Signal then filed a separate notice of appeal, which we docketed and assigned number 24-1029. The district court's entry of final judgment, along with our consolidation of the timely noticed appeals, leaves no doubt therefore about our appellate jurisdiction. No proceedings remain pending in the district court. See 28 U.S.C. § 1291.

### III

Signal challenges the district court's dismissal of the fraudulent concealment theory of the fraud claim, the striking of its request for punitive damages, the grant of summary judgment, and the denial of its motion to compel production of Jonathan Friedland's December 2017 memorandum. The district court took great care in its analysis at every stage of the litigation. We discuss each of its decisions in turn and, after our own review of the record, find no basis to disagree.

### A

We start with the district court's dismissal of Signal's fraudulent concealment theory of fraud liability, which we review without deference. See *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014).

To avoid dismissal under Rule 12(b)(6), a plaintiff's complaint must allege enough factual information to "state a

claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). But fraud claims, like the one Signal alleges, are subject to a heightened pleading standard. Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); see *Wolin v. Smith Barney Inc.*, 83 F.3d 847, 854 (7th Cir. 1996) ("[F]raudulent concealment is a species of fraud []and so … must be pleaded with particularity[.]").

Signal's complaint alleged a single claim for "fraud and fraudulent concealment" against Sugar Felsenthal and four of its attorneys. The claim centered on the October 20, 2017 email sent by Jonathan Friedland in which he stated that Sugar Felsenthal did not represent Farva Jafri in matters directly adverse to Signal and, further, refused to answer whether the law firm represented Jafri in any other matters. The district court reasonably understood the claim as seeking relief based on two separate legal theories: fraudulent misrepresentation and fraudulent concealment. So the district court separately analyzed whether Signal plausibly pleaded a claim as to each theory of fraud.

Signal's allegation that Friedland knowingly made a false statement when he denied any adverse representation of Jafri by Sugar Felsenthal, the district court found, stated a plausible claim for relief under a theory of fraudulent misrepresentation. But the district court concluded that Friedland's refusal to disclose Sugar Felsenthal's representations of Jafri in other matters did not present a viable fraud claim on a theory of fraudulent concealment. Fraudulent concealment, under Illinois law, the district court reasoned, requires a duty to speak, yet Sugar Felsenthal had no duty to disclose non-

adverse, unconflicted representations of other clients like Jafri. The district court therefore effectively bifurcated Signal's fraud claim—dismissing the fraudulent concealment theory of the claim and allowing the fraudulent misrepresentation theory to go forward.

But "[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). Rather, the question at the motion to dismiss stage "is simply whether the complaint includes factual allegations that state a plausible claim for relief." *Id.*

"A claim," we have explained, "is the set of operative facts that produce an assertable right in court and create an entitlement to a remedy." *St. Augustine Sch. v. Underly*, 78 F.4th 349, 352 (7th Cir. 2023). A legal theory, by contrast, "is the vehicle for pursuing the claim; it may be based on any type of legal source, whether a constitution, statute, precedent, or administrative law," and "[t]he specific theory dictates what the plaintiff needs to prove to prevail on a claim and what relief may be available." *Id.* Where a plaintiff states a plausible claim for relief under one discernable legal theory, "we start and end there." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021); see also *id.* at 589 ("With a viable agency claim on its actual authority theory, [the plaintiff's] complaint moves forward at this pleading stage. In reaching this result, we need not and do not reach [the plaintiff's] apparent authority and ratification theories of agency liability.").

As applied here, Signal's fraud "claim" consists of the set of alleged facts surrounding Sugar Felsenthal's representation of Jafri and the statements the law firm's attorneys made (or failed to make) to Signal regarding that representation.

Signal sought relief under two distinct legal theories: fraudulent misrepresentation and fraudulent concealment. Once the district court concluded that Signal plausibly stated a claim for relief under the fraudulent misrepresentation theory, the proper course of action was for the district court to "end there." *Id.* at 587. Instead, the district court proceeded to analyze—and ultimately dismiss—the fraudulent concealment theory of liability. This approach was mistaken. But we conclude the error was harmless. Explaining why, however, requires a bit of unpacking.

Signal itself has not always been clear about the scope of its fraudulent concealment theory of liability. The company's complaint could be understood to allege that Sugar Felsenthal fraudulently concealed the law firm's representation of Jafri in matters *adverse* to Signal. But it could also be read to suggest more broadly that Sugar Felsenthal wrongfully failed to disclose *any* representation of Jafri, regardless of whether it posed an ethical conflict.

Some clarity has emerged on appeal. Signal's opening brief makes plain that the company contends Jonathan Friedland of Sugar Felsenthal refused to disclose adverse, conflicting representations of Jafri—not unconflicted ones. And when pressed at oral argument about the content of Signal's fraudulent concealment theory, counsel pointed to Friedland's affirmative statement denying any adverse representation of Jafri by Sugar Felsenthal.

Against this backdrop, we fail to see how dismissal of the fraudulent concealment theory of liability prejudiced Signal. The fraudulent misrepresentation aspect of the fraud claim— which the district court allowed to go forward—concerned this exact same statement by Friedland. And Signal has not

described what, if any, evidence related to the alleged concealment (as opposed to the affirmative misrepresentation) it was unable to pursue during discovery. It is unclear to us what that evidence would be. After all, a false statement about adverse representations and failure to disclose adverse representations are two sides of the same coin. And it is equally unclear to us how Sugar Felsenthal wrongfully concealing adverse representations resulted in an injury legally distinct from any that arose out of the alleged false statement by Friedland about the same adverse representations. Signal, for its part, does not identify any prejudice in this regard either.

Further, counsel for Signal agreed at oral argument that an attorney has no obligation to disclose their representation of other clients in matters without direct adversity. This concession makes sense because the point is clear under Illinois law.

The Illinois Rules of Professional Conduct require attorneys to disclose representations of clients that are directly adverse and, as a result, present a conflict of interest. See Ill. R. Prof'l Conduct R. 1.7(b)(4) (2010) (requiring a client to give "informed consent" before a lawyer may represent a client where the representation involves a concurrent conflict of interest); *id.* R. 1.7(a) (defining a conflict of interest as where "the representation of one client will be directly adverse to another client" or "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client"). But not so for representations that do not present such a conflict.

While Rule 1.6(b)(7) allows an attorney to disclose information to "detect and resolve conflicts of interest if the revealed information would not prejudice the client," such disclosure is only permissive, not mandatory. *Id.* R. 1.6(b)(7).

Indeed, the comments make clear that a lawyer's decision not to disclose does not violate the Rules. See *id.* R. 1.6 cmt. 17.

A duty to disclose unconflicted representations of other clients, therefore, finds no support in the Illinois Rules of Professional Conduct. And Signal has failed to point to any source of law otherwise establishing such a duty. Put another way, because Signal could not allege that Sugar Felsenthal "was under a duty to disclose" the law firm's unconflicted representations of Jafri, the company had no possible basis for relief on this theory of fraudulent concealment at summary judgment. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996); see also *Moore v. Pendavinji*, No. 1-23-1305, 2024 WL 4489612, at *7 (Ill. App. Ct. Oct. 15, 2024) (explaining that "failure to establish … a duty to speak[] is fatal to a claim of fraudulent concealment").

In the final analysis, then, we conclude that the district court's mistaken bifurcation of Signal's fraud claim and dismissal of the fraudulent concealment theory of liability was harmless.

B

We come next to Signal's challenge to the district court's entry of summary judgment in favor of Sugar Felsenthal and its attorneys.

We review a district court's decision with a fresh set of eyes, asking whether any genuine issue of material fact exists and, if not, whether Sugar Felsenthal is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). The law considers a dispute genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "As to

materiality," the Supreme Court has explained, "the substantive law will identify which facts are material." *Id.* And in conducting this inquiry, we construe the facts and draw all reasonable inferences in favor of Signal as the party opposing summary judgment. See *id.* at 255.

Recall that three of Signal's claims against Sugar Felsenthal and its attorneys survived dismissal: legal malpractice, breach of contract, and fraud—albeit the latter limited to a fraudulent misrepresentation theory of liability. The district court concluded that each claim failed at summary judgment because the record contained insufficient evidence on which a reasonable jury could find in favor of Signal. Upon reviewing the record in light of Illinois law governing Signal's claims, we agree. The district court properly granted summary judgment on the malpractice and breach of contract claims, and on appeal Signal has waived any challenge to the award of summary judgment on the fraudulent misrepresentation theory of fraud liability.

*Legal Malpractice.* A claim for legal malpractice under Illinois law requires "(1) an attorney-client relationship, (2) a negligent act or breach, (3) proximate cause, and (4) damages." *Hefferman v. Bass*, 467 F.3d 596, 600 (7th Cir. 2006) (citing *Webb v. Damisch*, 842 N.E.2d 140, 146 (Ill. App. Ct. 2005)). "The proximate cause element of this claim," Illinois courts have emphasized, "requires that the plaintiff must plead facts sufficient to show that but for the attorney's malpractice, the client would have been successful in the undertaking the attorney was retained to perform." *Owens v. McDermott, Will & Emery*, 736 N.E.2d 145, 155 (Ill. App. Ct. 2000).

The alleged malpractice here centers on Sugar Felsenthal's legal advice to Farva Jafri on matters directly adverse to

Signal—counseling her on potential litigation involving Signal and helping her set up the competing litigation funding companies. Sugar Felsenthal's conflicted legal advice injured Signal, the company urges, by causing it to lose outside investments to Jafri's venture.

Viewing the facts, as we must, in the light most favorable to Signal, a jury could conclude that Sugar Felsenthal advised Jafri on the prospect of litigation with Signal should Matthew Eager invest in her competing venture. Jafri's email to Eager reported that she had discussed the litigation risk of Eager's investment with her attorneys, her affidavit confirmed that Eager worried about a potential lawsuit by Signal's parent company, and Jafri's text messages—combined with the law firm's billing entries—would allow a reasonable jury to infer that attorneys at Sugar Felsenthal provided the legal advice in question.

But even assuming Sugar Felsenthal breached a duty of its attorney-client relationship by providing this advice or helping Jafri incorporate the entities for her competing venture, there is no evidence that, as a result, Sugar Felsenthal caused Signal to lose any investors. Signal points to the investments Eager and Brij Shah made in Jafri's new litigation funding business. But the affidavits of Eager and Shah demonstrate that any investment by either of them in Signal would have been purely speculative and not necessarily mutually exclusive with one in Jafri's venture. Shah further explained that he chose to invest with Jafri because they are friends and indeed had never heard of litigation funding, let alone Signal, before Jafri reached out to him. And when Eager emailed Signal asking whether the company took on outside investors, Signal's chief executive officer never responded to the inquiry. We see

no basis on which a jury could find that Signal would have accepted an investment offer from Eager if he had extended one.

On this record, Signal cannot establish that Sugar Felsenthal's legal advice resulted in any harm to the company. So we conclude the district court properly granted summary judgment in favor of the law firm and its attorneys.

*Breach of Contract.* Signal's breach of contract claim survived dismissal as an alternative theory of recovery to the legal malpractice claim. See *Collins v. Reynard*, 607 N.E.2d 1185, 1186 (Ill. 1992) ("[A] complaint against a lawyer for professional malpractice may be couched in either contract or tort and that recovery may be sought in the alternative."). Under Illinois law, a contract claim for malpractice likewise requires a plaintiff to prove that the attorney's breach proximately caused injury to the plaintiff. See *Timothy Whelan L. Assocs., Ltd. v. Kruppe*, 947 N.E.2d 366, 373 (Ill. App. Ct. 2011). Signal's breach of contract claim, therefore, fails for the same reasons as its legal malpractice claim.

*Fraudulent Misrepresentation.* The surviving portion of Signal's fraud claim alleges that Sugar Felsenthal's Jonathan Friedland falsely stated the law firm did not represent Jafri in any matter adverse to Signal, causing injury in the form of attorney's fees the company paid after that alleged misrepresentation. But when the claim reached summary judgment, the district court pointed to evidence that Signal paid no attorney's fees following the date of the alleged misrepresentation. Because the company did not suffer injury as a result of any fraud, the district court entered summary judgment for Sugar Felsenthal on this claim too.

We see no basis to disagree with the district court's chain of reasoning. And we can stop short of elaborating further and reaching any definitive conclusion, for Signal faces a bigger hurdle: waiver. Failure to develop an argument on appeal results in waiver. See *Greenbank v. Great Am. Assurance Co.*, 47 F.4th 618, 629 (7th Cir. 2022) (finding waiver where party generally asserted they were entitled to summary judgment as to all their claims but failed to make specific arguments on appeal as to individual claims). And that is what happened here.

The statement of issues Signal presented in its opening brief limited itself to the summary judgment rulings on the legal malpractice and breach of contract claims. And the substance of its brief similarly does not contest the district court's summary judgment ruling as to fraudulent misrepresentation. Because Signal has failed to articulate a basis upon which to reverse the district court's summary judgment ruling with respect to the fraudulent misrepresentation theory of its fraud claim, the company has waived any contention that we should do so.

C

Our rulings in connection with the motion to dismiss and summary judgment eliminate the need to resolve whether the district court committed any error in striking Signal's request for punitive damages on its fraud claim. Because we have affirmed the district court's dismissal of the fraudulent concealment component of the fraud claim and because Signal has waived any challenge on appeal to the grant of summary judgment regarding the fraudulent misrepresentation theory of fraud liability, there is no need to address the appropriate remedy for a claim that has not survived.

By the same token, Signal's motion to certify to the Illinois Supreme Court the question of the propriety of its request for punitive damages is denied as moot.

D

That brings us in closing to Signal's challenge to the district court's discovery ruling. The discovery dispute centers on a document prepared by Jonathan Friedland of Sugar Felsenthal. Friedland explained during his deposition that, expecting future litigation with Signal, he wrote a memorandum to the file in December 2017 to memorialize his understanding of the facts at the time. And he testified that he re-read this memorandum before Signal deposed him.

Signal requested a copy of Friedland's memorandum in discovery. The company does not contest that the memorandum finds protection in the work product doctrine, which generally shields from discovery "documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). But, because Friedland reviewed this memorandum to prepare for his deposition, Signal urges that it is nevertheless entitled to the document pursuant to Federal Rule of Evidence 612. The magistrate judge denied Signal's motion to compel production, and the district court affirmed.

Our review of a district court's discovery ruling is deferential, as we reverse only for abuse of discretion. See *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 784 (7th Cir. 2013). A court does not abuse its discretion, we have underscored, unless "(1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is

based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Gile v. United Airlines*, 95 F.3d 492, 495 (7th Cir. 1996).

Rule 612 provides that when witnesses use a writing to refresh their memory before testifying, "an adverse party is entitled to have the writing produced" if the district court decides that "justice requires" production of the document. Fed. R. Evid. 612.

We have not had occasion to address what a moving party must establish to obtain a document under the Rule. But the Rule's advisory committee notes make clear that production is "limited only to those writings which may fairly be said in fact to have an impact upon the testimony of the witness." Fed. R. Evid. 612 advisory committee's notes to the 1972 proposed rules. And our fellow circuit courts have held that a witness's review of the document in question must have actually influenced their testimony. See, *e.g.*, *Sporck v. Peil*, 759 F.2d 312, 318–19 (3d Cir. 1985) (granting mandamus to vacate a Rule 612 production order where deposing counsel failed to lay foundation that the deponent's answers to "specific areas of questioning were informed by documents he had reviewed"); *In re Kellogg Brown & Root, Inc.*, 796 F.3d 137, 144 (D.C. Cir. 2015) (explaining that an adverse party is not entitled to a document under Rule 612 "unless the writing influenced the witness's testimony" (quoting 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 612.04(2)(b)(i) (2d ed. 1997))).

These principles find straightforward application to the discovery dispute before us. Friedland testified that he wrote the memorandum in December 2017, after Signal threatened

suit and suggested Sugar Felsenthal put its insurance carrier on notice, and later reread it prior to his deposition. But Signal failed to lay the proper foundation that Friedland's review of the memorandum refreshed his recollection or influenced any aspect of his deposition testimony. So, after examining the deposition transcript, the magistrate judge determined that it did not.

Like the district court, we see no clear error in that finding of fact. To the contrary, Signal's own brief on appeal confirms that Friedland's memory was not refreshed. It complains, for example, that during his deposition Friedland could not recall essential facts about Sugar Felsenthal's work for Farva Jafri or the law firm's conflicts analysis in connection with that representation. If Friedland recalled next to nothing about the Jafri representation, it is hard to see how his memorandum refreshed his memory about that same representation. We therefore have little trouble concluding that Rule 612 does not entitle Signal to a copy of the memorandum.

Our conclusion allows us to leave for another day the question of how to properly resolve the tension between Rule 612 and the work product doctrine in circumstances where a witness does refresh their memory with a protected writing. See 28 Charles Alan Wright & Victor J. Gold, *Federal Practice & Procedure: Evidence* § 6188 (2d ed. 2012) (describing divergent approaches taken by courts).

For all of these reasons, then, we AFFIRM.